## Chadwick v. Chadwick

C.P. of Delaware County, no. 92-19535.

*Albert Momjian,* for plaintiff.
*H. Beatty Chadwick,* pro se.

KENNEY SR., *J.,* October 27, 2004—Pending before the court are claims for equitable distribution of marital property, counsel fees and costs, and a de novo appeal from a master's findings with respect to plaintiff's request for alimony pendente lite.

## I. FINDINGS OF FACT

(1) The parties were married on March 31, 1977, and separated in or about September of 1992.

(2) The complaint in divorce was filed on November 23, 1992.

(3) A bifurcation order was subsequently entered, and a final decree in divorce was entered on November 15, 2001.

(4) The plaintiff had not previously been married. A prior marriage of the defendant ended in divorce in 1977.

(5) There were no children born of the marriage.

(6) The plaintiff was born on October 30, 1954, and is 49 years of age. She has an undergraduate degree from Dickinson College.

(7) The defendant was born on June 21, 1936, and is 68 years of age. He has an undergraduate degree from the University of Pennsylvania, and a law degree from the Law School of the University of Pennsylvania.

(8) The plaintiff enjoys good health.

(9) The defendant has been diagnosed with a recurrence of malignant lymphoma, although he appeared to be in good health at the time of trial. Dr. John Durocher

testified that his illness will likely grow more serious, and that his life expectancy is uncertain.

## *Employment*

(10) The plaintiff is currently self-employed as an artist. She developed her skills during the marriage, and the defendant was supportive of her work. Marital funds were contributed to her training, but were not extraordinary in amount, and were made pursuant to an understanding of the parties with respect to the roles and contributions of each in and to the marriage.

(11) Prior to separation, plaintiff had begun to show her work in at least one important Philadelphia gallery, and she now has an affiliation with a gallery near her home in Maine.

(12) Her recent income has varied, but has averaged in the range of $40,000 to $50,000 per year since separation. Her earnings have enabled her to purchase a home in Maine at a foreclosure sale. She is only able to afford to carry catastrophic health care insurance, however.

(13) Since separation, plaintiff has been able to accumulate only a modest separate estate.

(14) The defendant was employed by I. U. International for eight years prior to the marriage and for 11 years during the marriage, ending in 1988.

(15) He, initially, was assistant general counsel to I. U. International, and, eventually, was its general counsel for a number of years. During that period of time his income was between $100,000 per year and $200,000 per year.

(16) Subsequent to his position at I. U. International, he was a practicing attorney and had other employment and earned approximately $100,000 per year.

(17) For a short time prior to the parties' separation he chose to be employed at a salary which was significantly less than his prior earnings or his earning capacity.

## Date of Marriage

(18) On or about the date of the marriage, the plaintiff was a recent college graduate and owed approximately $5,000 in consideration of student loans. The loan balances were paid in full during the marriage from marital funds.

(19) The court considers this to be a nominal amount given the assets and earnings of the parties during coverture.

(20) The defendant possessed investment accounts and cash on the date of the marriage which he contends were valued at $225,000 and $17,000 respectively, along with an IRA whose date of marriage value was unclear. He maintained these assets in his name alone but contributed marital funds to them during the marriage. These assets also appreciated during the marriage.

(21) The defendant also brought substantial and valuable items of personalty to the marriage which he regards to be his separate property.

(22) Prior to the marriage, the defendant owned a home in Bala Cynwyd, Pennsylvania, which he sold, and the proceeds of which were utilized in the purchase of the first marital home in September of 1977. That home, and a subsequent marital home located at 280 South Roberts

Road, Bryn Mawr, Pennsylvania, purchased in July of 1991, were owned as tenants by the entireties.

(23) Prior to the marriage, the defendant also owned a summer cottage in Frankfort, Michigan. This property was never jointly-titled. The defendant argues that this property has no value, and cannot be conveyed, because he has granted his first wife the right to use it for three weeks each summer. His first wife testified, however, that there are no documents memorializing the grant, and that she has not used the property since 1978 or 1979. No proofs as to any appreciation during coverture were made at trial.

## Period of Coverture

(24) During the marriage, the parties enjoyed a very comfortable style of life, regularly entertaining and being entertained, living in an expensive and well-furnished home in a nice neighborhood, enjoying the summer cottage, and traveling to France, Italy, Greece, Hawaii, and the Southwest, among other destinations.

(25) The parties accumulated a limited amount of personal property during the marriage, including vehicles and motorcycles.

(26) Defendant also had very substantial income during this time, including a generous severance from I. U. International.

## Date of Separation

(27) Plaintiff separated from defendant in or about September of 1992, and took a limited number of items of personalty with her when she left, including some of

her paintings and drawings. She eventually received two marital vehicles.

(28) The largest part of the personalty contained in the marital home, including essentially all of the furnishings brought to the marriage by the defendant, was left in the possession of the defendant.

(29) The parties made only vague and limited proofs as to the remaining marital personalty and the court, therefore, is unable to make more specific findings as to it.

(30) The court finds, however, that the major items of personalty brought to the marriage by the defendant, and which remained in his possession after separation, remained his separate property.

(31) Defendant also retained four motorcycles after separation.

(32) The plaintiff had an investment account with U.S.A.A. on the date of separation, with a balance approximating $2,500, and an IRA with a value approximating $23,000. Neither party offered more recent values at trial.

(33) The defendant had investment accounts in his name alone valued at $1,593,925 on the date of separation, of which he acknowledges $1,037,925 to be marital. He therefore acknowledges 65.11 percent to be marital. These were the successors to the accounts maintained on the date of the marriage.

(34) The IRA possessed by the defendant on the date of the marriage was valued at $846,939 on the date of separation, and he acknowledges $645,585 to be marital. He therefore acknowledges 76.22 percent to be marital.

(35) The plaintiff contends that both the investment accounts and this IRA are entirely marital pursuant to the holding in *Verholek v. Verholek,* 741 A.2d 792 (Pa. Super. 1999), in that, despite their maintenance in defendant's name alone, marital funds were contributed to them.

(36) On the date of separation the defendant also possessed an IRA account valued at approximately $40,000 which he acknowledges to be marital.

(37) Defendant testified that, after a transfer to Maison Blanche Limited, he retained sums approximating $100,000, including the IRA valued at $40,000.

(38) Accepting defendant's analysis, 65.11 percent of these sums, or $39,066, was marital.

(39) Finally, no proofs were made at trial with respect to any marital debt.

### Alimony Pendente Lite

(40) On or about February 25, 1993, a master appointed by the court recommended to the court that an order of alimony pendente lite be entered, payable by defendant to plaintiff, effective January 27, 1993. The master's finding was entered as an order of the court on February 26, 1993, and the defendant made a timely request for a hearing de novo by the court.

(41) The parties, subsequently, entered into an agreement whereunder defendant's marital individual retirement account was redeemed and the sum of $40,000 was paid to plaintiff as alimony pendente lite in return for plaintiff's agreement that defendant's liability for fur-

ther alimony pendente lite would be determined as part of these equitable distribution proceedings.

(42) The court finds that the plaintiff's earnings or earning capacity for purposes of alimony pendente lite were approximately $30,000 per year, less approximately 20 percent in tax liability, or $2,000 per month, from the date of separation until 1999, when she began to have more significant earnings from sales of her work. Thereafter, through and including 2001, she earned an average of $57,000 per year, less approximately 20 percent in tax liability, or $3,800 per month.

(43) Husband refused to disclose his income for 1993 and thereafter.

(44) The court finds that the defendant's earnings or earning capacity for purposes of alimony pendente lite were $100,000 per year, less approximately 20 percent in tax liability, or $6,667 per month.

(45) Defendant admits to termination payments at or about the time of the alimony pendente lite proceedings of $6,402 per month after taxes. This sum is exclusive of the income from the Robert L. Montgomery trusts.

(46) The defendant has failed to pay any alimony pendente lite to the plaintiff with the exception of the sum of $40,000 received by agreement from the defendant's IRA.

(47) Defendant's normal date of retirement, at age 65, would have been June 21, 2001.

### Fair Rental Value

(48) After the date of separation, the defendant continued his residence at the marital home until August of 1994.

(49) The parties agreed at trial that the fair rental value of the marital home during that time was $2,500 per month. The parties also agreed that any claim of plaintiff for the fair rental value of the home would be for a period of 22 months.

(50) The defendant's uncontradicted testimony was that, during that time, he paid a mortgage of approximately $680 per month and property taxes of about $500 per month, along with additional sums in consideration of maintenance and utilities. Defendant's testimony with respect to the sums paid in consideration of maintenance was essentially limited to an estimated amount and lacked specificity sufficient to show how the amount was determined, whether the amount was reflective of consistent expenditures, or whether the plaintiff benefited from them.

(51) The court finds, therefore, that defendant is entitled to a credit in the amount of $1,180 per month in consideration of payment of the marital mortgage and property taxes.

(52) The court also finds that, for purposes of determining the fair rental value of the marital home, and the credit to defendant for his expenditures, plaintiff's interest in the home should be considered to be 50 percent.

## Marital Home

(53) The marital home was sold during the course of these proceedings, and, pursuant to an order of this court, the net proceeds thereof, in the amount of $329,494.83, were placed in an escrow account with plaintiff's counsel as escrow agent.

(54) The plaintiff contends that all of these funds are marital by reason of the titling of the two marital homes as tenants by the entireties.

(55) The defendant contends that the proceeds of the marital home were 85.44 percent marital.

## Transfers

(56) Prior to the separation, on or about August 30, 1990, the defendant entered into a joint venture agreement with an entity known as Maison Blanche Limited, a corporation having its offices in Gibraltar, and made an initial investment therein in the amount of $5,000. The joint venture agreement allowed Maison Blanche Limited to make capital calls against the defendant in an amount not to exceed $2,750,000.

(57) The defendant testified that, during the pendency of the alimony pendente lite proceedings between the parties, Maison Blanche Limited made a capital call of him in the amount of $2,502,000.

(58) The defendant did not communicate to the plaintiff or her counsel that such a capital call had been made.

(59) The defendant testified that, prior to February 25, 1993, he transferred the sum of $2,502,000 to Maison Blanche Limited, in response to the capital call, which sum included a substantial amount of marital assets. Except as is identified elsewhere herein, this was almost all of the parties' financial assets, marital and non-marital.

(60) Plaintiff disputes that all of this sum was actually transmitted to Maison Blanche Limited.

(61) Defendant testified that the transfer was partly in cash and partly in the form of securities.

(62) The transfer was made from defendant's investment accounts and from the IRA created by him prior to the marriage.

(63) As of January 31, 1993, defendant's investment account and the IRA initially funded prior to the marriage had a value of $2,527,197.

(64) It appeared to the court from the proofs made at trial that all of the IRA maintained by the defendant on the date of the marriage was transferred.

(65) Defendant testified that he retains his interest in Maison Blanche Limited, and that it is that interest which is before the court for equitable distribution.

(66) On or about April 8, 1993, the sum of $869,106 from the transferred assets was wired to an account of National Financial Services Corporation in favor of H.B. Chadwick, account no. **********.

(67) At the instruction of the defendant, the foregoing sum was then invested in three annuities purchased from American Skandia, North American Security Life, and Nationwide Life Insurance Co., in the amounts of $289,666.66, $289,666.67, and $289,772.67, respectively. Each such annuity named as annuitant "H.B. Chadwick," and designated as beneficiaries on the death of H.B. Chadwick, William C. Chadwick and John Chadwick, the sons of the defendant herein.

(68) The defendant failed to advise the plaintiff that he had received and reinvested these funds.

(69) The defendant, on the contrary, continued to represent to the plaintiff and the court that all of the trans-

ferred funds were in the possession of Maison Blanche Limited.

(70) The foregoing annuities qualified as investments in a qualified plan such that sums rolled-over to them from the defendant's IRA did not become subject to imposition of federal income tax or penalty.

(71) The purchase of the foregoing annuities was accomplished within 60 days of the transfer of the defendant's IRA, in the exact amount of the IRA, allowing the reinvestment to be made without tax consequences or penalty for calendar year 1993.

(72) Defendant has failed and refused to disclose to the plaintiff his income tax returns for calendar year 1993 and thereafter.

(73) On or about April 29, 1994, at the plaintiff's request, this court entered an order enjoining the defendant from further assigning, concealing, secreting, or dissipating marital assets, freezing certain assets in defendant's name, or held for his benefit, and directing certain financial institutions to produce any and all documentation reflecting accounts held in defendant's name or for his benefit.

(74) In or about May of 1994, at the written request of "H. B. Chadwick" all three annuities were liquidated and the proceeds thereof paid to him.

(75) A proceeds check in the amount of $291,403.17, issued by North American Security Life Insurance Co., was endorsed "For: deposit only in Banco Mercantil del Istmo S.A. acct. H.B.Chadwick."

(76) A proceeds check in the amount of $296,389.47, issued by Nationwide Life Insurance Company was en-

dorsed "For deposit only in Banco Mercantil del Istmo S.A. para depositar a la accunta de H. B. Chadwick."

(77) Defendant acknowledges the occurrence of the above transactions, but claims that, at all times material thereto, he acted as a "straw party" with respect to the funds for Maison Blanche Limited.

(78) He also argued at trial that the transferred funds remain invested with Maison Blanche Limited.

(79) On or about July 22, 1994, the court entered an order again enjoining the defendant from assigning, concealing, secreting, or dissipating marital assets, directing the return of the $2,500,000 transferred by the defendant out of the United States in February 1993, within 24 hours, to an account to be maintained by counsel for the plaintiff pending further proceedings, directing the sale of the marital home located at 280 Roberts Road, Bryn Mawr, PA, directing the payment of counsel fees to plaintiff in the amount of $75,000, enjoining defendant from leaving the jurisdiction of the courts of the Commonwealth, and directing defendant to surrender his passport to the court.

(80) The defendant, thereafter, failed to return any part of the $2,502,000 in compliance with the court's order of July 22, 1994.

(81) Arthur H. Felderstein, CPA, CFE, CVA, a certified public accountant, and financial analyst, having been qualified as an expert in the area of security valuation, testified that, had the assets maintained in the accounts at Wheat First Securities/Butcher and Singer on behalf of defendant been maintained therein, and not transferred to Maison Blanche Limited and other destinations, the

value of the assets contained therein on January 31, 1993, in the amount of $2,527,197, left so invested, and with all dividends received in cash and reinvested in 3-month T-bills, compounded quarterly, would have had a value of $8,189,909, before taxes, as of April 30, 2004.

(82) If, as he testified, defendant transferred the cash and securities contained in his investment account and IRA, Mr. Felderstein testified accurately as to the current value of those assets.

(83) Based on the foregoing, the court finds that $868,985 of the $2,502,000 claimed to have been transferred to Maison Blanche Limited, or 34.73 percent, was in the form of defendant's IRA. Accordingly, $1,633,015, or 65.27 percent, was in the form of defendant's investment accounts.

(84) Accordingly, the court deems it to be equitable to regard that 34.73 percent of the appreciation of the transferred fund was allocable to the IRA, and calculates the current value of the IRA as follows:

| | |
|---|---|
| Appreciated fund | $8,189,909 |
| Transferred fund | $2,502,000 |
| Appreciation | $5,687,909 |
| % allocable to IRA | x .3473 |
| Appreciation of IRA | $1,975,411 |
| IRA | $ 868,985 |
| Current value of IRA, transferred and appreciated | $2,844,396 |

(85) The court further deems it equitable to regard that 65.27 percent of the appreciation of the transferred fund

was allocable to the investment account, and calculates the current value of the investment account as follows:

| | |
|---|---|
| Appreciation | $5,687,909 |
| Appreciation of IRA | ($1,975,411) |
| Appreciation of investment accounts | $3,712,498 |
| Investment accounts transferred | $1,633,015 |
| Current value of investment accounts, transferred and appreciated | $5,345,513 |
| IRA | $2,844,396 |
| Investment accounts | $5,345,513 |
| Appreciated amount | $8,189,909 |

(86) On or about July 27, 1994, the defendant executed a quitclaim deed whereby the summer cottage located in Frankfort, Michigan, was conveyed to H. Beatty Chadwick and William C.T. Chadwick as joint tenants with right of survivorship. Such a conveyance is inconsistent with defendant's position that the property could not be conveyed, and, accordingly, has no value.

(87) On or about October 10, 1996, H. Beatty Chadwick and William C.T. Chadwick executed a quitclaim deed conveying the premises located in Frankfort, Michigan, to H.B.C. Corporation, a Delaware corporation.

(88) The court finds that the defendant has repeatedly acted to hide assets in order to defeat proper equitable distribution of the marital estate.

(89) On November 2, 1994, the defendant's having failed to comply with the order of July 22, 1994, this court entered an order adjudicating the defendant to be in contempt, and directed the defendant's incarceration pending compliance with the order.

(90) Defendant, thereupon, failed to appear to serve his term of incarceration.

(91) Thereafter, the defendant was arrested and incarcerated pursuant to the order of November 2, 1994.

(92) The defendant has continued to fail to comply with the orders of this court, and he remains incarcerated.

(93) During the course of his incarceration, the defendant, while maintaining that he has no assets or funds enabling him to comply with the court's order, has consulted and/or retained a substantial number of attorneys.

(94) During the course of his incarceration, the defendant, while maintaining that he has no assets or funds enabling him to comply with the court's order, has filed the various proceedings identified hereinafter.

(95) During the course of his incarceration, the defendant, while maintaining that he has no assets or funds enabling him to comply with the court's order, has filed a defamation action in the courts of the state of Delaware.

(96) During the course of his incarceration, the defendant, while maintaining that he has no assets or funds enabling him to comply with the court's order, has filed an action in the state courts of the state of Maine.

(97) During the course of his incarceration, the defendant, while maintaining that he has no assets or

funds enabling him to comply with the court's order, has filed an action in the federal courts of the state of Maine.

(98) On December 30, 2003, the Honorable Kevin F. Kelly of this court entered an order respecting the disposition by H. Beatty Chadwick of the $2,502,000, which provided, in pertinent part, as follows:

"Regarding the period of time up to and including the date of H. Beatty Chadwick's most recent contempt evidentiary hearing immediately prior to the instant action's of the equitable distribution trial, *any and all* salient findings of fact regarding inter alia the existence, location, control, constructive or otherwise by H. Beatty Chadwick and/the value of the $2,502,000, in whole and/or part, initially transferred by H. Beatty Chadwick to Maison Blanche Limited in Gibraltar named by the trial court in these related contempt proceedings, inter alia *shall* be considered the law of the case and, hence, *no evidence contrary* to these findings of fact *shall* be permitted to be introduced at *any hearing* in the above-captioned matter concerning the equitable distribution of the marital state at bar."

(99) The court took judicial notice of the opinion of the Superior Court dated August 23, 1996, of the notes of testimony of a proceeding before the Honorable Joseph Battle conducted on August 17, 1995, and of the findings made by Judge Battle in his opinion of September 20, 1995.

(100) The court takes judicial notice of the fact that this court has repeatedly found that the defendant maintains control over the transferred funds.

(101) The defendant has also agreed that all of the prior proceedings before the court may be considered to be a part of the record in this case.

(102) Defendant's testimony, that the transfer to Maison Blanche Limited was a legitimate response to a capital call, was not credible or worthy of belief.

(103) The signatures on the checks, annuity documents, and redemption correspondence were the signatures of the defendant.

(104) Defendant's testimony that he acted as a straw party of Maison Blanche Limited and received and reinvested the transferred funds on that basis was not credible or worthy of belief. On the contrary, defendant received the funds in his own right and utilized them for his own purposes.

(105) The transfer of the funds to Maison Blanche Limited and their return and reinvestment was done in fraud of the plaintiff and her rights in equitable distribution.

(106) Based on the evidence introduced at trial, it was clear to the court that defendant, at all times material hereto, has had control of the sums transferred to Maison Blanche Limited.

### Escrow Accounts

(107) Defendant is also the income beneficiary of two trusts known as the Robert L. Montgomery trusts, which were established for his benefit.

(108) Some of the funds contained in the investment accounts on the date of separation were received from these trusts.

(109) On or about October 21, 1994, the court entered an order requiring the income of the Robert L. Montgomery trusts to be paid into an escrow account with the plaintiff's counsel as escrow agent.

(110) The defendant appealed the entry of the order of October 21, 1994, but the order has been upheld on appeal.

(111) Interest pertaining to, and the disbursements from, the escrow account related to the sale of the marital home have been as are set forth on exhibit A hereto.

(112) The funds related to the income distributions from the Robert L. Montgomery trusts are in accordance with exhibit B hereto.

(113) The parties desire that an appropriate sum from the escrow accounts be held in escrow to be applied to the costs of a jointly-commissioned search by the Honorable A. Leo Sereni, retired president judge of this court, with respect to the current status and location of the funds initially transferred to Maison Blanche Limited.

## Counsel Fees and Costs

(114) The acts and omissions of the defendant related to the transfer of funds to Maison Blanche Limited and the attempt to protect the summer cabin have caused the plaintiff to incur an extraordinary amount of counsel fees and costs in her attempt to identify and secure marital assets for equitable distribution.

(115) These include, but are not limited to, services in the identification and valuation of the transferred assets, proceedings to locate the assets upon their initial transfer to Gibraltar, proceedings in Gibraltar in connection

with the transfer, proceedings and depositions in New York and other jurisdictions tracing the transfer of moneys to the annuities and thereafter, proceedings to assert a lien against the cabin, proceedings seeking to enjoin further dissipation of marital assets and effect their recovery, and proceedings to enforce the various orders of this court enjoining further dissipation of marital assets and seeking their recovery.

(116) Specifically, in its review of the time records submitted by plaintiff's counsel, the court notes the following:

"11 Habeas corpus and similar petitions in the court of Common Pleas of Delaware County;

"6 Petitions or appeals filed in the Superior Court related to defendant's incarceration;

"8 proceedings brought in the Supreme Court of Pennsylvania;

"6 proceedings brought in the United States District Court;

"4 proceedings before the Third Circuit Court of Appeals; and

"2 proceedings brought before the United States Supreme Court, including a King's Bench proceeding."

(117) The court also notes that this court entertained a petition for writ of ne exeat and scheduled hearings on a monthly basis at which defendant was given the opportunity to comply with the orders of this court, and which counsel for the plaintiff was obliged to attend.

(118) This court also considered petitions for furlough from the Delaware County Prison and proceedings with

respect to defendant's capacity and the appointment of a guardian on his behalf.

(119) Plaintiff and her counsel had no option other than to prepare for and address all of these proceedings.

(120) Given the sheer volume of the proceedings, their novelty, and their submission over a protracted period of time, plaintiff and her counsel had little choice other than to involve multiple members of the Schnader firm and to continually review the file and the prior proceedings.

(121) Prior to the commencement of trial, the plaintiff had incurred counsel fees and costs in the amount of $1,879,738.82, against which payments on account in the amount of $225,638.76, had been made, leaving a balance due and owing in the amount of $1,654,100.06.

(122) Approximately $29,000 in fees was incurred in connection with proceedings in the courts of Gibraltar related to the location and return of transferred funds.

(123) During the period of representation, in addition to the proceedings herein, the defendant filed, and plaintiff's counsel, or its local counsel, defended defamation actions in the states of Delaware and Michigan and a civil rights action in the state of Maine.

(124) Plaintiff's counsel testified that plaintiff incurred fees in the following approximate amounts: the Delaware proceedings—$12,000, and the Maine proceedings—$8,000. The exact amount incurred in connection with the Michigan proceedings was not testified to, but the court finds that it was not consequential, at least in relative terms, given the fact that it, and at least part of the Gibraltar fees, was paid from a prior

award of $150,000, of which approximately $125,000 was credited against the invoices of the Schnader firm.

(125) Defendant argues that counsel fees are not properly to be awarded herein for representation in those matters.

(126) Defendant also argues that counsel fees incurred in connection with a protection from abuse action, proceedings before the Disciplinary Board, and in connection with various press and other interviews are not properly to be awarded herein.

(127) The court's review of the Schnader time records reveals that services rendered in connection with the protection from abuse action, the proceedings before the Disciplinary Board, in connection with various press and other interviews, and in connection with unfairly duplicative reviews of the file or conferences involving plaintiff's counsel was nominal.

(128) In what is likely an overabundance of caution on behalf of the defendant, the court finds that non-compensable charges cannot conceivably exceed 20 percent of the charges made.

(129) The defendant, finally, argues that counsel fees are not properly awarded herein for proceedings before the appellate courts of the Commonwealth, the federal courts of the Third Circuit, and the United States Supreme Court, even though those proceedings related solely to his incarceration for failure to obey the orders entered by this court herein requiring the return of the transferred assets in order that equitable distribution be accomplished.

(130) Plaintiff's counsel estimates that 60 percent of the foregoing total of fees and costs has been incurred in the course of the litigation related to defendant's incarceration for failure to comply with the orders of this court entered in furtherance of these divorce proceedings.

(131) The issues presented in this matter with respect to the identification and valuation of marital property, its division, plaintiffs' claims for alimony pendente lite and permanent alimony, and her claims for counsel fees and costs, were not novel or difficult of resolution if addressed and presented properly by the parties.

(132) The court finds that, given the issues presented herein, plaintiff should not have incurred counsel fees in excess of $30,000, if the matter had been addressed and presented properly and without the issues presented by the transfer, even if the matter had been presented to the master and appealed and presented again to the court.

(133) The plaintiff has not heretofore had the financial ability to pay all of the counsel fees and costs related to this action, particularly given the defendant's conduct herein.

(134) As noted, the plaintiff has not received any payments of alimony pendente lite during the interim period other than the $40,000 paid by agreement.

(135) The court identifies and values the marital estate as follows:

Escrow account maintained at First Union
Bank funded with the proceeds of the sale
of the marital home (as of 3/24/04, net of
sums previously distributed to the parties
and net of $25,000 to be escrowed

| | |
|---|---:|
| hereunder) | $ 77,181 |
| Plaintiff's IRA | $ 23,000 |
| Plaintiff's U.S.A.A. account | $ 2,500 |
| Defendant's IRA | $ 40,000 |
| Defendant's checking account | $ 1,000 |
| Plaintiff's checking account | $ 500 |
| Joint savings account | $ 2,000 |
| Automobiles | $ 16,275 |
| Motorcycles | $ 10,500 |
| Marital funds retained by defendant. after the transfer ($60,000 x 65.11%) | $ 39,066 |
| Funds previously received by plaintiff from the real estate escrow account | $ 232,000 |
| Funds previously received by defendant from the real estate escrow account | $ 45,000 |
| Marital IRA assets transferred by defendant to Maison Blanche Limited ($2,844,396 x 76.22%) | $ 2,167,999 |
| Marital investment account assets transferred by defendant to Maison Blanche Limited ($5,345,513 x 65.11%) | $ 3,480,463 |
| Total | $ 6,137,484 |

(136) The plaintiff has already received the following assets of the marital estate:

| | |
|---|---:|
| Plaintiff's checking account | $ 500 |

| | |
|---|---|
| Joint savings account | $ 2,000 |
| Plaintiff's IRA | $ 2,500 |
| Plaintiff's U.S.A.A. account | $ 23,000 |
| Automobiles | $ 16,275 |
| Distributions—real estate escrow account | $ 232,000 |
| Total | $ 276,275 |

(137) The defendant has already received the following assets of the marital estate:

| | |
|---|---|
| Defendant's checking account | $ 1,000 |
| Defendant's IRA | $ 40,000 |
| Motorcycles | $ 10,500 |
| Marital assets contributed to Maison Blanche Limited | $ 5,648,462 |
| Accounts retained by defendant | $ 39,066 |
| Distributions—real estate escrow account | $ 45,000 |
| Total | $ 5,784,028 |

(138) The sum of $140,587 remained in an escrow account maintained at PNC Bank funded from the proceeds of the income distributions from the Robert L. Montgomery trusts, as of March 24, 2004.

(139) Plaintiff has already received the sum of $108,772 from the escrow account funded by the income from the Robert L. Montgomery trusts.

(140) Defendant, by his testimony and arguments herein, has demonstrated to the court that he will not comply with the order to be entered in connection herewith.

(141) On or about August 23, 1994, judgment was entered by the court in favor of the plaintiff, and against the defendant, in the amount of $290,000, in order to protect the claims of the plaintiff for equitable distribution. It remains unsatisfied.

(142) Defendant has appeared herein pro se and has presented his case capably.

## II. CONCLUSIONS OF LAW

(1) The court has subject matter jurisdiction over this action and personal jurisdiction over the parties.

(2) During the marriage, each party assumed the role, and made the financial and personal contributions, expected by the other during the course of the marriage, and neither is entitled to any adjustment therefor in the division of the marital estate.

(3) The major pieces of marital personalty brought by the defendant to the marriage retained their character as separate property. They have been retained by him. The remaining marital personalty has been retained and divided by the parties in a way which the court deems to be equitable, and which requires no further adjustment.

(4) The defendant made a gift to the marriage of the proceeds from the sale of his prior residence. Accordingly, the escrow account established from the proceeds of the sale of the home is deemed to be marital in its entirety.

(5) A fair rental value of the marital home in the amount of $2,500 per month, for a period of 22 months, is marital property to be divided between the parties.

(6) Plaintiff should be awarded one-half of the fair rental value of the marital home, and be charged with one-half of defendant's payment of the mortgage and property taxes for that period of time.

(7) The cabin in Michigan owned by the defendant prior to the marriage is his separate property.

(8) Defendant's conveyance of his interest in the cabin in Michigan was made in fraud of the plaintiff and in order to defeat her rights in equitable distribution.

(9) The order of this court dated December 30, 2003, respecting possession and control by the defendant of certain of the marital assets, is properly to be recognized herein.

(10) The holding of *Verholek* is inapposite to this matter, and the calculation of the marital portion of the investment account and his pre-marital IRA proposed by defendant in exhibit H-16, while not perfect, is found to be equitable under the circumstances.

(11) Defendant's transmission of the sum of $2,502,000 to Maison Blanche Limited, without the knowledge or agreement of the plaintiff, was made in an attempt to defraud the plaintiff herein and constituted a dissipation of marital property.

(12) Defendant's transmission of the sum of $2,502,000 to Maison Blanche Limited, and his failure to return or account for the funds, was dilatory, obdurate, and vexatious within the meaning of 42 Pa.C.S. §2503(7), and entitles the plaintiff to an award of counsel fees as a sanction.

(13) Defendant's transmission of the sum of $2,502,000 to Maison Blanche Limited, and his failure

to return or account for the funds, was arbitrary, vexatious, and in bad faith within the meaning of 42 Pa.C.S. §2503(9), and entitles the plaintiff to an award of counsel fees as a sanction.

(14) In addition, by his transmission and refusal to return those funds, defendant prolonged the litigation and caused plaintiff substantial and unnecessary counsel fees incurred in seeking to discover marital assets and effect compliance with the orders of this court.

(15) An award of counsel fees and costs is required herein in order to promote fair administration of justice and serve the purposes of the Divorce Code.

(16) An award of counsel fees and costs is also required herein in order that plaintiff not be placed at a financial disadvantage and be placed on par with defendant.

(17) Inasmuch as defendant's imprisonment was due to his own voluntary failure to comply with various orders of this court, his earnings and/or earning capacity should not be deemed to have been diminished thereafter for purposes of determination of his equitable share of the marital estate or calculation of alimony pendente lite payable to the plaintiff.

(18) The court considers that the counsel fees and costs incurred by the plaintiff in contesting defendant's various attempts to terminate his incarceration herein, although incurred in part in connection with proceedings in the appellate courts of the Commonwealth, the federal courts of the Third Circuit, and the United States Supreme Court, have been incurred within the context of these divorce proceedings and are compensable un-

der the provisions of the Divorce Code, in addition to being compensable as a sanction.

(19) Plaintiff is entitled to alimony pendente lite in the amount of $1,867 per month from the date of filing of her petition, January 27, 1993, until January of 1999, and to alimony pendente lite in the amount of $1,147 per month from January of 1999 until June 1, 2001, the normal date of defendant's retirement at age 65, less the sum of $40,000 which has already been paid to her. Defendant is therefore liable to plaintiff for unpaid alimony pendente lite in the amount of $165,820, less $40,000, or a remaining balance of $125,820.

(20) In considering the criteria set forth in section 3502(a) of the Divorce Code, the court considered the following factors to be significant:

"(a) This was a substantial marriage lasting some 15 1/2 years. Accordingly, the plaintiff is entitled to a substantial portion of the marital estate.

"(b) At the time of separation, each party enjoyed good health and was fully employable. Defendant's earning capacity was far greater than that of plaintiff. He has now attained and passed the normal age of retirement, however.

"The court considered the matter of the defendant's current health. Even if it were clear that the defendant will not hereafter enjoy good health, he is now beyond the age of retirement and will not likely suffer any loss of future ability for capital acquisitions as a result.

"(c) The court finds that the contributions to the training and earning power of the plaintiff by the defendant were modest and consistent with plaintiff's agreed role

in the marriage, and not such as to require any significant adjustment in the award of the marital estate.

"(d) Following separation, defendant's opportunity for future acquisitions of capital was much greater than that of the plaintiff.

"(e) Plaintiff earns a middle class living. Defendant has reached the age of retirement, but has assets under his control which will enable him to live comfortably. Additionally, he is the income beneficiary of two trusts which generated income of approximately $24,000 in calendar year 2003.

"(f) The defendant was the source of many of the marital assets, having gifted some to the marriage and, while having retained some assets as his separate property, has been the source of appreciated assets which are marital under the Divorce Code. Defendant, by his own account, has taken control over the sum of $2,502,000, before appreciation. These sums continue to be under his control.

"(g) The parties enjoyed a very comfortable standard of living during the marriage."

(21) The judgment heretofore entered by this court in favor of the plaintiff and against the defendant in the amount of $290,000 was entered in order to secure the rights of the plaintiff, and not as an award of her share of the marital estate to her.

## ORDER

And now, October 27, 2004, it is hereby ordered as follows:

(1) Each party is awarded 50 percent of the marital estate. Accordingly, each party is awarded the sum of

$3,068,742, together with 50 percent of all interest earned on the real estate escrow account up to and including the date of its liquidation.

(2) The marital estate is awarded as follows:

| | |
|---|---:|
| To plaintiff: | $ 3,068,742 |
| Plaintiff's checking account | ($ 500) |
| Joint savings account | ($ 2,000) |
| Plaintiff's IRA | ($ 23,000) |
| Plaintiff's U.S.A.A. account | ($ 2,500) |
| Automobiles | ($ 16,275) |
| Funds previously received by plaintiff | ($ 232,000) |
| Real estate escrow account | ($ 77,181) |
| Balance | $ 2,715,286 |
| Less: Funds received from trust escrow account | ($ 108,772) |
| Balance to be paid to plaintiff | $ 2,606,514 |
| To defendant: | |
| Defendant's checking account | $ 1,000 |
| Defendant's IRA | $ 40,000 |
| Motorcycles | $ 10,500 |
| Assets retained | $ 39,066 |
| Marital assets transferred to Maison Blanche Limited | $ 5,648,462 |
| Distributions—real estate escrow account | $ 45,000 |
| Total | $ 5,784,028 |

| | |
|---|---|
| Defendant's award | ($ 3,068,742) |
| Balance to be paid to plaintiff | $ 2,715,286 |
| Less: Funds paid from trust escrow account | ($ 108,772) |
| Balance to be paid to plaintiff | $ 2,606,514 |

(3) The balance to be paid by the defendant to the plaintiff hereunder shall be paid within 30 days of the date hereof.

(4) Defendant is awarded the interest in the investment in Maison Blanche Limited. Any excess in the value of the interest in Maison Blanche Limited over and above the sum of $8,189,909 shall be divided into marital and non-marital components by the methodology employed herein, and the marital component(s) shall be divided equally.

(5) Any increase in the value of the escrow accounts since the date of their valuation herein shall, similarly, be divided equally between the parties but paid to the plaintiff with appropriate credit to the defendant.

(6) Each party is awarded the marital personalty retained by him or her.

(7) Defendant shall also pay plaintiff the sum of $14,520, representing one-half of the fair rental value of the marital home during her dispossession therefrom, less one-half of the mortgage and property tax payments made by defendant during that time, within 30 days of the date hereof.

(8) Defendant shall pay plaintiff the sum of $125,820 in consideration of past due alimony pendente lite within 30 days of the date hereof.

(9) No award of permanent alimony is made.

(10) The defendant shall pay counsel fees to the plaintiff in the amount of $1,463,790 within 30 days of the date hereof. This amount is calculated as follows:

| | | |
|---|---|---|
| $ | 1,879,738 | total counsel fees and costs |
| ($ | 20,000) | incurred in non-divorce matters |
| ($ | 30,000) | plaintiff's normal responsibility |
| $ | 1,829,738 | fees and costs allocable to the divorce action |
| | x .80 | adjustment for incidental matters and any duplication |
| $ | 1,463,790 | counsel fees to be paid by defendant |

(11) The remaining balance of the escrow account funded by the interest of the Robert L. Montgomery trusts, including any interest thereon, shall be paid to plaintiff in consideration of the award made to her hereunder.

(12) Any and all sums paid by or on behalf of defendant to plaintiff hereunder shall be first applied to the award of marital property and counsel fees and costs hereunder, and last to payment of past due alimony pendente lite.

(13) The plaintiff is awarded a lien and charge against the funds transmitted by defendant to Maison Blanche Limited, and all appreciation and income attributable thereto, in whatever form those funds may have taken in the interim, pursuant to the provisions of 23 Pa.C.S. §3502(b), in order to effect compliance with this order.

(14) The plaintiff is awarded judgment against the defendant in the amount of $4,210,644. This sum represents the equitable distribution award made herein, together with the awards for fair rental value, past due alimony pendente lite, and counsel fees and costs, less the balance of the escrow account funded with the income from the Robert L. Montgomery trusts. The prior judgment of this court in the amount of $290,000 is to be considered merged herein and of no force and effect.

(15) The Robert L. Montgomery trusts shall continue to make all income payments due to the defendant to the plaintiff, and, additionally, when permitted under the trust instruments, the Robert L. Montgomery trusts shall make any payments of principal due to the defendant to the plaintiff, for so long as any of the obligations imposed upon the defendant under the terms of this order shall remain unsatisfied.

(16) Defendant shall post security in the amount of $4,210,644 in order to insure compliance with the terms of this order.

(17) Defendant shall pay plaintiff interest at the legal rate on all sums required to be paid under the terms of this order, until such sums have been paid in full.

(18) The sum of $25,000 shall be held in escrow by counsel for the plaintiff, as agent for the parties, and applied against the fees and costs of the search of the Honorable A. Leo Sereni for the status and location of the funds initially transferred to Maison Blanche Limited. Any sums not so expended shall be considered to be a part of the marital estate, but shall be paid to the plaintiff in satisfaction of the award made to her herein.

(19) The parties shall execute any and all documents reasonably required in giving effect to the provisions of this order.

---

### EXHIBIT A

Barbara Chadwick
*Escrow funds from sale of 280 Roberts Road*
*United Valley Bank—A/C no.* ***-*****

| | | |
|---|---|---|
| 08/08/96 | Original deposit (proceeds from the sale of 280 Roberts Road) | $329,494.83 |
| 08/30/96 | Interest | $981.93 |
| 09/30/96 | Interest | $1,338.19 |
| | *Bank balance 09/30/96* | $331,814.95 |
| 03/28/97 | Disbursement to S. Wydrzynski | $800 |
| 07/07/97 | Disbursement to SHS&L ($5,000 sent to Marrache & Co. and $9,295.68 sent to Miller Johnson Snell & Cummiskey) | $150,000 |
| 10/01/96- 10/19/97 | Interest | $14,765.18 |
| | *Bank balance 10/19/97* | $195,780.13 |

*First Union Bank—A/C no.* *************

| | | |
|---|---|---|
| 10/20/97 | Opening balance (transferred from United Valley Bank) | $195,780.13 |

Interest earned 10/31/97 to 10/27/99     $11,032.33

$206,812.46

Disbursements

| | | | |
|---|---|---|---|
| 09/24/98 | Hickey, Hickey et al. | $10,000 | |
| | John O'Brien, M.D. J.D. | $5,000 | |
| 10/28/98 | Dr. Timothy Michals | $3,000 | |
| 01/28/99 | Hickey & Bellanzani | $15,000 | |
| | Schnader Harrison | $15,000 | |
| 09/08/99 | Hickey & Bellanzani | $15,000 | |
| | Schnader Harrison | $15,000 | |
| | | | $78,000 |

| | | |
|---|---|---|
| *Bank balance 10/27/99* | | $128,812.46 |
| 11/30/99 Interest | | $326.77 |
| 12/31/99 Interest | | $317.35 |
| 01/31/00 Interest | | $317.31 |
| 02/29/00 Interest | | $297.49 |
| 03/31/00 Interest | | $318.76 |
| 04/28/00 Interest | | $288.59 |
| 05/31/00 Interest | | $340.94 |
| *Bank balance 05/31/00* | | $131,019.67 |
| 06/29/00 Check | $15,000 | |
| 06/30/00 Interest | | $469.75 |
| 07/13/00 Check | $15,000 | |
| 07/31/00 Interest | | $400.61 |
| 08/31/00 Interest | | $380.40 |
| 09/29/00 Interest | | $357.15 |

406

| Date / Description | | |
|---|---|---|
| 10/31/00 Interest | | $395.54 |
| 11/30/00 Interest | | $372.21 |
| 12/29/00 Interest | | $361.08 |
| 01/31/01 Interest | | $404.54 |
| 02/22/01 Debit transaction | $154.43 | |
| 02/28/01 Interest | | $332.79 |
| *Bank balance 02/28/01* | | $104,339.31 |
| 03/15/01 Interest | | $322.93 |
| 03/08/01 Check no. 1001 | $450 | |
| 03/15/01 Check no. 1002 | $7,000 | $7,450 |
| *Bank balance 03/30/01* | | $97,212.24 |
| 04/30/01 Interest | | $291.90 |
| *Bank balance 04/30/01* | | $97,504.14 |
| 05/03/01 Interest | | $276.97 |
| *Bank balance 05/31/01* | | $97,781.11 |
| 06/29/01 Interest | | $259.81 |
| *Bank balance 06/29/01* | | $98,040.92 |
| 07/31/01 Interest | | $287.49 |
| *Bank balance 07/31/01* | | $98,328.41 |
| 08/31/01 Interest | | $272.26 |
| *Bank balance 08/31/01* | | $98,600.67 |
| 09/28/01 Interest | | $219.26 |
| *Bank balance 09/28/01* | | $98,819.93 |
| 10/31/01 Interest | | $204.04 |
| *Bank balance 10/31/01* | | $99,023.97 |
| 11/30/01 Interest | | $162.91 |

| | |
|---|---|
| *Bank balance 11/30/01* | $99,185.88 |
| 12/31/01 Interest | $162.71 |
| 12/31/01 Federal withholding tax | $49.63 |
| *Bank balance 12/31/01* | $99,299.96 |
| 01/31/02 Interest | $143.93 |
| 01/31/02 Federal withholding tax | $43.18 |
| *Bank balance 01/31/02* | $99,400.71 |
| 02/28/02 Interest | $128.95 |
| 02/28/02 Federal withholding tax | $38.69 |
| *Bank balance 02/28/02* | $99,490.97 |
| 03/29/02 Interest | $133.68 |
| 03/29/02 Federal withholding tax | $40.10 |
| *Bank balance 03/31/02* | $99,584.55 |
| 04/19/02 Interest | $65.48 |
| *Bank balance 04/19/02* | $99,649.13 |

*First Union High Performance Money Market—*
*A/C no.* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| 04/19/02 Opening balance (transferred from A/C \*\*\*\*\*\*\*\*\*\*\*\*\*\*) | $99,649.13 |
| 04/24/02 Interest | $32.44 |
| *Bank balance 04/24/02* | $99,681.57 |
| 05/24/02 Interest | $162.35 |
| *Bank balance 05/24/02* | $99,843.92 |
| 06/26/02 Interest | $178.89 |
| *Bank balance 06/25/02* | $100,022.81 |

| | |
|---|---|
| 07/25/02 Interest | $159.66 |
| *Bank balance 07/25/02* | $100,182.47 |
| 08/26/02 Interest | $163.88 |
| *Bank balance 08/26/02* | $100,346.35 |
| 09/26/02 Interest | $147.54 |
| *Bank balance 09/26/02* | $100,493.89 |
| 10/28/02 Interest | $152.53 |
| *Bank balance 10/28/02* | $100,646.42 |
| 11/26/02 Interest | $129.98 |
| *Bank balance 11/26/02* | $100,776.40 |
| 12/26/02 Interest | $115.20 |
| *Bank balance 12/26/02* | $100,891.60 |
| 01/28/03 Interest | $125.76 |
| *Bank balance 01/28/03* | $101,017.36 |
| 02/26/03 Interest | $107.60 |
| *Bank balance 2/26/03* | $101,124.96 |
| 03/26/03 Interest | $104.00 |
| *Bank balance 03/26/03* | $101,228.96 |
| 04/24/03 Interest | $107.83 |
| Bank balance 04/24/03 | $101,336.79 |
| 05/27/03 Interest | $122.84 |
| *Bank balance 05/27/03* | $101,459.63 |
| 06/25/03 Interest | $106.68 |
| *Bank balance 06/25/03* | $101,566.31 |
| 07/25/03 Interest | $72.26 |
| *Bank balance 07/25/03* | $101,638.57 |

| | |
|---|---:|
| 08/25/03 Interest | $71.31 |
| *Bank balance 08/25/03* | $101,709.88 |
| 09/25/03 Interest | $66.90 |
| *Bank balance 09/25/03* | $101,776.78 |
| 10/27/03 Interest | $71.40 |
| *Bank balance 10/27/03* | $101,848.18 |
| 11/25/03 Interest | $64.75 |
| *Bank balance 11/25/03* | $101,912.93 |
| 12/24/03 Interest | $64.79 |
| *Bank balance 12/24/03* | $101,977.72 |
| 01/28/04 Interest | $78.09 |
| *Bank balance 01/28/04* | $102,055.81 |
| 02/25/04 Interest | $64.75 |
| *Bank balance 02/25/04* | $102,118.29 |
| 03/24/04 Interest | $62.41 |
| *Bank balance 03/24/04* | $102,180.80 |

---

## EXHIBIT B

Barbara Chadwick
*PNC Bank Checks*
*Received from the*
*Robert L. Montgomery Trust 6 & 7*

| | no. 6 | no. 7 |
|---|---|---|
| 12/15/94 | 4,639.60 | |
| 01/12/95 | 4,830.27 | 7,500.16 |

410

| Date | | |
|---|---|---|
| 04/06/95 | 4,617.77 | |
| 07/11/95 | 4,956.50 | 8,268.29 |
| 10/05/95 | 4,622.23 | |
| 01/11/96 | 4,547.32 | 7,990.71 |
| 04/04/96 | 4,424.30 | |
| 07/12/96 | 3,416.93 | 7,186.55 |
| 10/03/96 | 4,575.76 | |
| 01/03/97 | 4,898.07 | 8,486.58 |
| 04/04/97 | 4,380.01 | |
| 07/08/97 | 3,510.45 | 7,066.95 |
| 10/14/87 | 4,654.62 | |
| 01/07/98 | 5,162.83 | 8,799.51 |
| 04/02/98 | 5,626.32 | |
| 07/06/98 | 3,293.68 | 7,457.68 |
| 10/08/98 | 3,699.14 | |
| 01/13/99 | 4,827.61 | 8,835.99 |
| 04/06/99 | 3,633.05 | |
| 07/14/99 | 3,370.15 | 5,970.70 |
| 10/06/99 | 3,568.00 | |
| 03/15/00 | 3,925.71 | 7,241.98 |
| 04/10/00 | 4,407.29 | |
| 07/13/00 | 3,951.00 | 7,664.68 |
| 10/12/00 | 4,230.22 | |
| 01/05/01 | 4,390.47 | 7,182.39 |
| 04/07/01 | 5,057.72 | |
| 07/10/01 | 4,202.42 | 7,511.99 |

| | | | |
|---|---|---|---|
| 10/10/01 | 4,040.39 | | |
| 01/15/02 | 3,607.75 | 6,246.06 | |
| 04/05/02 | 4,025.44 | | |
| 07/11/02 | 3,540.68 | 6,094.72 | |
| 10/10/02 | 3,535.53 | | |
| 01/09/03 | 4,413.96 | 6,133.68 | |
| 04/09/03 | 3,319.68 | | |
| 07/10/03 | 7,479.15 | | |
| 10/10/03 | 2,653.55 | | |
| 01/13/04 | 3,911.42 | 5,598.32 | $293,228.99 |
| 04/14/04 | 2,412.11 | | |
| Totals | $164,404.16 | $131,236.94 | $295,641.10 |