Sharon Ruth VERHOLEK, Appellee,

v.

Carl Lee VERHOLEK, Appellant.
(Four cases).

Superior Court of Pennsylvania.

Submitted Sept. 8, 1999.
Filed Nov. 19, 1999.

Anna Belle Jones, Mercer, for appellant.

Kenneth J. Horoho, Jr., Pittsburgh, for appellee.

Before McEWEN, President Judge, and DEL SOLE, KELLY, POPOVICH, JOHNSON, FORD ELLIOTT, EAKIN, JOYCE and STEVENS, JJ.

STEVENS, J.:

¶ 1 Appellant Carl Lee Verholek (Husband) appeals from a Final Decree in divorce and Order of alimony and equitable distribution entered on August 20, 1997, and from an Order entered on October 15, 1997, which reinstated Husband's obligation to pay alimony *pendente lite* to Appellee Sharon Ruth Verholek (Wife).[1] We affirm.

¶ 2 The relevant facts and procedural history are as follows: On September 10, 1992, Wife filed a Complaint in divorce. Husband and Wife separated on January 1, 1993, and, on January 3, 1994, the trial court ordered Husband to pay Wife alimony *pendente lite* in the amount of $4,700.00 per month and referred the parties' remaining equitable distribution, alimony, and counsel fee claims to a Master, who held a hearing and filed a Report, to which both parties filed timely Exceptions. The trial court's Final Decree and Order, entered on August 20, 1997, adopted in part and rejected in part the Master's Findings of Fact and Conclusions of Law. The Final Decree granted a divorce and the Order directed that the marital estate be divided equally, ordered Husband to pay $4,700.00 per month to Wife for six months as alimony, determined that alimony *pendente lite* arrearages amounted to $8,400.00, terminated Wife's alimony *pendente lite*, and determined that Wife was entitled to an award of $50,000.00 for attorney's fees.[2]

¶ 3 On September 19, 1997, Husband filed a Chapter 11 Bankruptcy Petition in the Western District of Pennsylvania, which Petition triggered the automatic stay provisions under the federal Bankruptcy Code. *See* 11 U.S.C. § 362(a). The automatic stay applied to the August 20, 1997 Final Decree and Order and to the January 3, 1994 Order regarding alimony *pendente lite*. Wife filed an Emergency Motion requesting relief from the automatic stay. The Bankruptcy Court granted Wife's request, allowing Wife to pursue the collection of alimony, alimony *pendente lite*, and alimony *pendente lite* arrears from Husband's earnings. Consequently, on October 15, 1997, the trial court entered an Order reinstating Husband's obligation to pay Wife alimony *pendente lite* according to the terms of the January 3, 1994 Order. On November 20, 1997, the Bankruptcy Court granted both parties relief to pursue any appeals from Orders arising out of the divorce proceedings.

¶ 4 Husband filed a timely direct appeal with this Court. Following appellate argument, a three-judge panel of this Court filed a memorandum on July 28, 1998; Judge Cavanaugh filed a dissent. Thereafter, Husband filed a Petition for Reargument/Reconsideration *en banc*, which was granted by this Court, and the original panel memorandum and dissent were withdrawn.

¶ 5 Husband raises seven issues on appeal, alleging the following:

(1) The trial court erred in finding that the 310 shares of Cattron, Inc. (Cattron) stock were marital property and that Husband was estopped from asserting that the stock was non-marital property;

(2) The trial court erred in valuing 310 shares of Cattron stock because it failed to apply discounts for lack of marketa-

---

1. Husband also appeals from an Order entered on September 15, 1997, denying Husband's Motion for Supersedeas and from an Order entered on November 6, 1997, dismissing Husband's Motion to Strike the Order entered on October 15, 1997. Because Husband failed to address any issues related to those appeals in his appellate brief, we will not consider them on appeal and deem them to be waived.

2. We note that we will discuss other Findings and Conclusions found in the Final Decree and Order in subsequent parts of this decision.

bility and minority interest in determining its fair market value;

(3) The trial court erred in permitting Wife's expert to testify regarding a second business valuation report, which was only one-page and was used in valuing the 310 shares of Cattron stock;

(4) The trial court erred in finding that Husband's $54,000.00 inheritance was marital property;

(5) The trial court erred in reinstating Wife's alimony *pendente lite* since the court lacked jurisdiction and Wife failed to appeal from the Final Decree and Order terminating alimony *pendente lite;*

(6) The trial court lacked the authority to enter a Divorce Decree and equitable distribution order since an affidavit was never filed;

(7) The trial court erred in awarding Wife excessive attorney's fees without any basis.[3]

¶ 6 Our standard of review of awards of equitable distribution, counsel fees, and alimony *pendente lite* is well settled: we will not disturb a trial court's determinations absent an abuse of discretion. *See Ruth v. Ruth*, 316 Pa.Super. 282, 462 A.2d 1351 (1983) (equitable distribution); *Remick v. Remick*, 310 Pa.Super. 23, 456 A.2d 163 (1983) (*en banc* ) (alimony *pendente lite*, award of counsel fees). A trial court has abused its discretion if the trial court "failed to follow proper legal procedures or misapplied the law." *Braderman v. Braderman*, 339 Pa.Super. 185, 488 A.2d 613, 615 (1985). We will not usurp the trial court's role as fact-finder. *Ruth, supra.* In reviewing allegations concerning the validity of the entry of a divorce decree, we evaluate the record *de novo* and decide independently whether a legal cause of action in divorce exists. *See*

*Jayne v. Jayne*, 443 Pa.Super. 664, 663 A.2d 169 (1995).

¶ 7 Husband's first contention is that the trial court erred in concluding that the 310 shares of Cattron stock were marital property and that Husband was estopped from asserting that the shares were non-marital property. During the beginning of this litigation, Husband asserted that the 310 shares of Cattron stock were jointly owned by him and Wife as tenants in the entirety. During the course of the Master's hearing, however, Husband sought to reclassify the 310 shares of Cattron Stock as non-marital property. When the Master gave Husband the opportunity to show good cause why he should be allowed to change his position regarding ownership of the Cattron stock, Husband asserted that he had good cause because his prior representations regarding the joint ownership of the stock allegedly were the result of the following: (1) his memory lapses stemming from his treatment for depression, (2) his reliance on a prior attorney's incorrect recollections, and (3) his current attorney's reliance on Cattron's corporate attorney's incorrect recollections. The Master concluded that Husband's reasons did not constitute good cause and that Husband, therefore, was estopped by Pennsylvania Rule of Civil Procedure 1920.33[4] from asserting that the stock shares were non-marital property. The trial court adopted that conclusion and we conclude that the trial court committed no error of law, complied with proper legal procedures, and did not abuse its discretion in concluding that Husband was estopped from asserting that the 310 shares of Cattron stock were non-marital property.

¶ 8 Husband's second and third arguments relate to the trial court's valuation of the 310 shares of Cattron stock.

---

3. Husband's issues have been renumbered for the sake of effective appellate review.

4. Rule 1920.33 provides as follows: "A party shall, except upon good cause shown, be

barred from offering any evidence that is inconsistent with or which goes beyond the fair scope of the information set forth in the pretrial statement." Pa.R.C.P.1920.33(d)(2).

The Divorce Code does not contain a specific method for valuing assets. The trial court must exercise its discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by the parties. *See Smith v. Smith*, 439 Pa.Super. 283, 653 A.2d 1259 (1995). The court is free to accept all, none, or portions of the testimony regarding the true and correct value of property. *See Aletto v. Aletto*, 371 Pa.Super. 230, 537 A.2d 1383 (1988). Additionally, the court may reject evidence offered by both parties in favor of its own valuation method. *See Fitzpatrick v. Fitzpatrick*, 377 Pa.Super. 268, 547 A.2d 362 (1988).

¶ 9 In this case, Wife's expert submitted a report basing his valuation of Cattron on a comparable sales method. The Master rejected the analysis and requested that Wife's expert submit a new report using the capitalization of earnings method used in Husband's expert's report. Wife's expert submitted a second report. The Master, however, performed his own calculation of the capitalization rate, using Wife's expert's calculation as a starting point but eliminating a certain factor included by Wife's expert. Further, in determining the value of the stock, the Master accepted Wife's expert's computation of Cattron's projected future income. The trial court adopted the Master's findings and conclusions relating to the valuation of the Cattron stock.

■ ¶ 10 On appeal, Husband argues that the trial court should have discounted the stock's value because of its lack of marketability and because the stock represented a minority interest. Husband, however, has not demonstrated that the trial court applied improper legal procedures or misapplied the relevant law. Wife's expert's second report[5] indicated that a discount for marketability was not needed under the valuation method adopted by Husband and the expert testi-

fied that a minority discount was not needed because the company was not valued as a whole. N.T. 1/10/96 at 259. The trial court had the discretion, as fact-finder, to accept Wife's expert's evidence. Thus, we conclude that the trial court did not abuse its discretion in accepting Wife's expert's calculation of Cattron's future income or in refusing to discount the stock's value.

¶ 11 We also find meritless Husband's contention that the trial court erred in permitting Wife's expert to testify regarding a second report valuing the Cattron stock because the report contained material beyond the scope of Wife's expert's first report.

¶ 12 In deciding whether an expert's testimony is within the fair scope of his report, we are mindful of the following principles:

> It is impossible to formulate a hard and fast rule for determining when a particular expert's testimony exceeds the fair scope of his or her pretrial report.... The controlling principle which must guide is whether the purpose of [Pennsylvania Rule of Civil Procedure] 4003.5 is being served[, which purpose] is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony.

*Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes–Barre, Inc.*, 348 Pa.Super. 285, 502 A.2d 210, 212–13 (1985).

■ ¶ 13 Here, Wife's expert originally submitted a valuation report, which used the comparable sales method in valuing the Cattron stock, and Husband submitted a valuation report, which used the capitalization method. During the Master's hearing, the Master concluded that Husband's expert's use of the capitalization method was correct, and the Master requested Wife's expert to prepare a new valuation of the Cattron stock using the capitalization method. Shortly thereafter, Wife submit-

---

**5.** As will be discussed *infra,* the trial court properly considered Wife's expert's second re- port and testimony relating thereto.

ted a report which contained the requested valuation using Husband's capitalization method, and her expert testified with regard thereto.[6] Based on these facts, we conclude that Wife's expert's testimony concerning the second report did not exceed the fair scope of Wife's expert's first report. Moreover, because Husband's own expert used the capitalization method in preparing his report, we cannot conclude that Wife's expert's testimony concerning valuation using the same method created unfair surprise. As such, we conclude that the trial court did not abuse its discretion by considering Wife's expert's second report, and testimony relating thereto, in valuing the 310 shares of Cattron stock.

¶ 14 Husband's next contention is that the trial court erred in concluding that Husband's $54,000.00 inheritance, which he received upon his mother's death, was marital property. Generally, property acquired during the marriage by bequest, devise, or descent is non-marital property. 23 Pa.C.S.A. § 3501(a)(3). However, once non-marital property is combined and co-mingled with marital property, it loses its identity as non-marital property and takes on the status of marital property. *Gruver v. Gruver*, 372 Pa.Super. 194, 539 A.2d 395 (1988); *Bold v. Bold*, 358 Pa.Super. 7, 516 A.2d 741 (1986).

¶ 15 In this case, Husband testified that he received a $54,000.00 inheritance from his mother and that he put the money into an account, which bore his name alone, but which also contained marital assets. N.T. 3/15/96 at 1002. Husband further testified that he used part of the inheritance money to buy the parties' first marital home, which was acquired in joint names, and that the remainder was placed into a brokerage account, which was opened after the marriage with marital funds. N.T. 3/15/96 at 1002; Plaintiff's Exhibit 57.

Moreover, Husband testified that he never considered any of the assets to be separated, including the inheritance money. N.T. 3/15/96 at 1002.

¶ 16 Because the inherited funds were co-mingled with marital funds, and Husband did not consider the inherited funds to be separate, non-marital property, we conclude that the trial court did not err in finding that Husband's inheritance was marital property. *See Rohrer v. Rohrer*, 715 A.2d 463 (Pa.Super.1998) (finding that inherited money which moves in and out of marital accounts loses its non-marital characteristic); *Barner v. Barner*, 364 Pa.Super. 1, 527 A.2d 122 (1987) (holding that in determining whether an asset is "marital property" we must consider the parties' intents); *Madden v. Madden*, 336 Pa.Super. 552, 486 A.2d 401 (1985) (holding that although certificates of deposit were originally acquired by the appellant as a gift from his mother, the certificates were later co-mingled with marital property and, thus, became "marital property"). We note that the fact that the inherited money was initially placed in an account bearing Husband's name alone does not require a different conclusion in this case. As discussed *supra*, the money which was originally inherited by Husband was later used, in part, to purchase joint marital property and the remainder was placed in an account used by both spouses. *See Rohrer, supra.*

¶ 17 Husband's next allegation is that the trial court erred in reinstating Wife's alimony *pendente lite* since the court lacked jurisdiction and Wife failed to appeal from the Final Decree and Order terminating alimony *pendente lite*. Specifically, Husband argues that (1) the October 15, 1997 reinstatement order was entered more than thirty days after the entry of the Order terminating Wife's alimony *pendente lite*, and (2) Wife did not

---

6. Husband contends that the report submitted by Wife's expert at the request of the Master was not admitted into evidence. According to an affidavit filed by the Master, however, it is clear that the report was admitted into evidence. Revised Affidavit Concerning Exhibit 49, 12/10/97, at 1.

seek reconsideration of the Final Decree and the order terminating her alimony *pendente lite.*[7]

¶ 18 Pursuant to 42 Pa.C.S.A. § 5505, the trial court "upon notice to the parties may modify or rescind any order within thirty days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed."

The lower court's authority under 42 Pa.C.S.A. § 5505 to modify or rescind an order "is almost entirely discretionary; this power may be exercised *sua sponte,* or may be invoked by a request for reconsideration filed by the parties, and the court's decision to decline to exercise such power will not be reviewed on appeal."

Although 42 Pa.C.S.A. § 5505 gives the trial court broad discretion, the trial court may consider a motion for reconsideration only if the motion for reconsideration is filed within thirty days of the entry of the disputed order. After the expiration of thirty days, the trial court loses its broad discretion to modify, and the order can be opened or vacated only upon a showing of extrinsic fraud, lack of jurisdiction over the subject matter, a fatal defect apparent on the face of the record or some other evidence of "extraordinary cause justifying intervention by the court."

*Stockton v. Stockton,* 698 A.2d 1334, 1337 (Pa.Super.1997) (citations and quotation omitted).

¶ 19 In the case *sub judice,* the trial court entered its order in response to Wife's petition for emergency relief from the automatic stay provisions of the Bankruptcy Code. In ordering that the automatic stay be lifted, the trial court reinstated Husband's obligation to pay alimony *pendente lite* upon determining that "Plaintiff/Wife ha[d] demonstrated the need for maintenance and professional services during the pendency of Defendant/Husband's bankruptcy." We conclude that such circumstances constitute "extraordinary cause," and, therefore, we find that the trial court had jurisdiction to reinstate Husband's obligation to pay alimony *pendente lite.*

¶ 20 Husband's next argument is that the trial court lacked subject matter jurisdiction to enter the Decree in Divorce and, hence, an order of equitable distribution. Specifically, Husband argues that, because no affidavit was filed in this case alleging that Husband and Wife lived separate and apart for at least two years and that the marriage was irretrievably broken, the trial court lacked subject matter jurisdiction to enter the Final Decree pursuant to 23 Pa.C.S.A. § 3301(d).[8]

¶ 21 Husband's argument mischaracterizes the nature of subject matter jurisdiction. Generally, subject matter jurisdiction has been defined as the court's power to hear cases of the class to which the case at issue belongs. *See Lowenschuss v. Lowenschuss,* 396 Pa.Super. 531, 579 A.2d 377 (1990). Here, the trial court had subject matter jurisdiction. Section 301 of the Divorce Code provides that the courts of common pleas have original jurisdiction in cases of divorce. *See* 23 Pa. C.S.A. § 3301. If a statutory prerequisite for the entry of a divorce decree is not

7. We note that Husband contends that Pennsylvania Rule of Appellate Procedure 1701(a) prevented the trial court from issuing the October 15, 1997 Order because his own appeal from the Final Decree and Order was pending at that time. However, this Court dismissed Husband's appeal of the Final Order and Decree on October 10, 1997, without prejudice. Thus, no appeal was pending at the time the trial court issued the October 15, 1997 reinstatement order.

8. Section 3301(d) of the Divorce Code provides that "[t]he court may grant a divorce where a Complaint has been filed alleging that the marriage is irretrievably broken and an affidavit has been filed alleging the parties have lived separate and apart for a period of at least two years and that the marriage is irretrievably broken...." 23 Pa.C.S.A. § 3301(d).

fulfilled, then a procedural defect has occurred; such a defect does not implicate subject matter jurisdiction. Thus, because Husband's contention is a challenge to the procedural aspects of divorce proceedings, and because Husband failed to raise that challenge in his Exceptions to the Master's Report, we conclude that he has waived that issue on appeal. *See* Pa.R.C.P. 1920.55–2(b).

¶ 22 Husband's final contention is that the trial court erred in awarding Wife attorney's fees in an excessive amount. We disagree.

¶ 23 If a party shows actual need, an award of counsel fees is appropriate to put the parties on par in maintaining or defending an action for divorce. *See John-son v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987). Moreover, a party to an action may be awarded counsel fees when another party engages in dilatory, obdurate, or vexatious conduct during the pendency of a matter. *See* 42 Pa.C.S.A. § 2503(7).

¶ 24 In the case *sub judice*, the trial court adopted the Findings and Conclusions of the Master relating to two awards of attorney's fees to Wife. An award of $16,857.00 in supplemental counsel fees was based on the Master's conclusion that Wife demonstrated actual need, despite the fact that she received a large settlement under the suggested equitable distribution scheme. Master's Report, 8/23/96, at 19. There is sufficient evidence in the record to support that conclusion and, therefore, the trial court did not abuse its discretion in awarding Wife supplemental counsel fees.

¶ 25 An award of $33,142.00 in counsel fees was based on Husband's actions that obstructed the timely and orderly prosecution of Wife's claim for equitable distribution. *Id.* at 18–19. The Master determined that the amount of the award was "clearly appropriate" because that amount represented the expenses directly incurred by Wife relating to Husband's attempt to obstruct the prosecution of Wife's claim for equitable distribution.[9]

¶ 26 After a review of the record, we conclude that the trial court had a sufficient basis for determining that Husband's conduct was obdurate, dilatory, or vexatious.[10] Therefore, we conclude that the trial court did not abuse its discretion in awarding Wife attorney's fees for Husband's conduct during the pendency of this case.

¶ 27 For all of the foregoing reasons, we affirm the trial court's Final Decree and Order entered on August 20, 1997, and the trial court's Order entered on October 15, 1997.

¶ 28 Affirmed.

---

9. In making its determination, the Master relied on *Hrinkevich v. Hrinkevich*, 450 Pa.Super. 405, 676 A.2d 237 (1996), in which the trial court awarded counsel fees to the wife on the basis of her husband's obdurate, vexatious, and dilatory conduct. *See Id.* at 241. We conclude that the Master (and the trial court in adopting the Master's Report on this issue) improperly relied on the decision in *Hrinkevich* because in that case this Court did not reach the merits of the trial court's award of counsel fees, quashing the appeal as interlocutory. *Id.* at 241–42. Nonetheless, we will affirm the action of the trial court for reasons other than those given by the trial judge.

10. The Master found that Husband, in conjunction with the officers of Cattron, obstructed the timely and orderly prosecution of Wife's claim of equitable distribution by attempting to block Wife's access to Cattron's financial statements. Master's Report, 8/23/96, at 7, 18.