J-S39031-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| LAURA J. MCCLEARY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ROGER L. MCCLEARY, | : | |
| | : | |
| Appellee | : | No. 1457 WDA 2016 |

Appeal from the Order Entered September 27, 2016
in the Court of Common Pleas of Clarion County
Civil Division at No(s): 549 C.D. 2012

BEFORE:    BENDER, P.J.E., BOWES, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED SEPTEMBER 27, 2017**

Laura J. McCleary (Wife) appeals from the order entered September 27, 2016, which decreed that she and Roger L. McCleary (Husband) are divorced, and *inter alia*, ordered equitable distribution of the marital property, denied Wife's request for counsel fees, and directed the parties to cash savings bonds for the benefit of their minor son.  We affirm in part, vacate in part, and remand for proceedings consistent with this memorandum.

Wife and Husband married in 2005 and separated in 2012.  This was the first marriage for Wife, age 44.  Husband is 57 and had two previous marriages.  Wife and Husband resided together at their marital residence in Shippenville, Pennsylvania until their separation in 2012.  During their

*Retired Senior Judge assigned to the Superior Court.

marriage, Wife and Husband had one child, W.M. (Son), born in 2008. The parties share 50/50 custody of Son.

Wife filed a complaint in divorce on June 7, 2012, seeking equitable distribution of the parties' marital assets, alimony, alimony *pendente lite*, counsel fees, costs, and expenses. After three hearings before a master, the master issued a report on May 5, 2016, which recommended that Husband receive marital equity of $50,230.34, or 54% of the total, and Wife receive $42,737.37, or 46% of the total. Master's Report, 5/5/2016, at 1. Although Husband received a larger portion of the marital assets, the master also recommended that Husband take on almost all of the parties' marital debt, including the mortgage and home equity loan on the residence where Wife resides. *Id.* at 18-20.

The parties have a significant disparity in their incomes. Husband, who has a high school education, has been employed at Columbia Gas since 1991. At the time of the final hearing before the master, his employment as a plant service specialist yielded a net monthly income of $3,958.62. Wife, who has an associate's degree from Dubois Business College, was employed for 20 years as an administrative assistant to the president of an insurance company, until she was laid off in 2014. Wife's net monthly income while she was employed in 2014 was $1,275.26. In February or March 2015, Wife began employment as a self-employed house cleaner, earning $842.36 a month in gross income. The master determined that Wife has failed to

locate "appropriate employment fitting her education and experience" and has the capacity to earn a net monthly income of $1,275.26. Master's Report, 5/5/2016, at 4. Nevertheless, the master acknowledged that even if Wife finds appropriate employment, Husband's income greatly exceeds Wife's earning capacity, and she has a more limited ability to acquire new assets.[1] *Id.* at 17-18, 23.

Regarding Wife's request for counsel fees and expenses, the master recommended the following.

> Wife has requested counsel fees and expenses in this matter. Husband does not have the ability to pay for Wife's counsel fees given the proposed distribution and being responsible for practically all of the outstanding marital debt. Husband also has substantial attorney's fees. Wife will have sufficient resources given the proposed distribution to pay for her own attorney's fees. Neither of the parties objected to the counsel fees, their reasonableness or the value of the services. Counsel fees should not be awarded as there is no need.
>
> Husband shall pay the [m]aster's fee and [c]ourt reporter fees related to this proceeding. His superior income, financial assets and ability to acquire assets in the future allow him to best carry the burden of these costs.

Master's Report, 5/5/2016, at 25.

---

[1] The master recommended denial of Wife's request for alimony, finding, *inter alia*, that Wife is capable of self-support through appropriate employment and that she will have sufficient resources to maintain and meet her needs as she did prior to the parties' relatively short marriage, especially since she will not be responsible for the mortgage or home equity loan for the home where she resides. The master also determined that, notwithstanding Husband's larger salary and receipt of most of the marital assets, Husband cannot afford to pay alimony due to his responsibility for the vast majority of the marital debt. *Id.* at 24.

The master also noted that Wife is custodian for an already-existing bank account at Clarion County Community Bank. The master deemed this account to be non-marital property, as Son is a beneficiary of this account under the Pennsylvania Uniform Transfers to Minors Act (PUTMA), 20 Pa.C.S. §§ 5301–5310. The master found that Wife and Son jointly own savings bonds valued at $2,000, which were a gift to Son, but the savings bonds are currently in Husband's possession. Master's Report, 5/5/2016, at 13. The master recommended that the savings bonds "be cashed and deposited into the Clarion County Community Bank account under [PUTMA]." *Id.* at 20.

Wife timely filed numerous exceptions to the recommendation of the master, and on August 31, 2016, the trial court issued an opinion denying all of the Wife's exceptions, except one not at issue on appeal, and entered an order modifying the master's recommendation consistent with its opinion. On the same date, the trial court entered a decree in divorce. Wife timely filed a notice of appeal and concise statement of errors complained of on appeal. Wife sets forth two issues for our consideration, which we review mindful of the following principles.

> It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. [In addition,] when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate [economic] justice and we will find an abuse of discretion only if the trial court misapplied the laws or failed to follow proper legal procedures. [Further,] the finder of fact is free to believe all, part, or none of the

evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Lee v. Lee*, 978 A.2d 380, 382-83 (Pa. Super. 2009) (quoting *Anzalone v. Anzalone*, 835 A.2d 773, 780 (Pa. Super. 2003)).

Moreover,

[w]e do not evaluate the propriety of the distribution order upon our agreement with the court['s] actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the [23 Pa.C.S.A. § 3502(a)] factors [for consideration in awarding equitable distribution]. If we fail to find an abuse of discretion, the [o]rder must stand. The trial court has the authority to divide the award as the equities presented in the particular case may require.

*Childress v. Bogosian*, 12 A.3d 448, 462 (Pa. Super. 2011) (internal citations and quotations omitted).

Wife's first issue asks us to determine whether the trial court abused its discretion by denying her request for counsel fees.[2] The trial court stated the following in denying Wife's request.

Wife's argument in support of this exception consists primarily of an assertion that Husband's superior financial position entitles her to the payment of attorney[s'] fees. The master reasonably found that Wife did not present a showing of need, which is the relevant inquiry as to counsel fees, rather than solely Husband's ability to pay. Moreover, the court's review of the record and master's report supports the master's conclusion that Husband should not have to pay Wife's counsel fees, which significantly exceed his own, due to his already existing obligation to pay his own attorney's fees and all of the master's costs, as well as

---

[2] The master determined that Wife's attorneys' fees totaled $30,186.18 and Husband's totaled $14,959.38. Master's Report, 5/5/2016, at 14. Neither party objected to the other's fees as unreasonable. *Id.*

Wife's wrongdoing in perpetrating an act of domestic violence upon Husband. Therefore, this exception will be denied.

Trial Court Opinion and Order, 8/31/2016, at 3 (unnecessary capitalization omitted; references to parties altered).

We review an award of counsel fees mindful of the following.

We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.

* * *

Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution. Counsel fees are awarded only upon a showing of need. Further, in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder.

*Teodorski v. Teodorski*, 857 A.2d 194, 201 (Pa. Super. 2004) (internal quotations and citations omitted).

We have held "[t]he simple fact that one spouse earns more than the other does not automatically entitle the dependent spouse to receive counsel fees or expenses. Rather, there must be a showing that the spouse who earns less needs the relief in order to adequately defend his or her rights." *Nemoto v. Nemoto*, 620 A.2d 1216, 1222 (Pa. Super. 1993) (citation omitted). The trial court may consider the parties' improved financial

position after the equitable distribution award, even if the spouses still have a significant disparity in income. ***Ganong v. Ganong***, 513 A.2d 1024, 1029 (Pa. Super. 1986) (affirming denial of counsel fees despite three to one income disparity between the parties).

Wife argues that she demonstrated sufficient need for assignment of her counsel fees to Husband due to the disparity in the parties' incomes, noting the master's determination that Husband was better suited to pay the costs of the master and court reporter based upon his "superior income, financial assets, and ability to acquire assets in the future…." ***Id.*** at 13 (citing Master's Report, 5/5/2015, at 25). She also points to her testimony regarding her financial inability to pay her own health insurance, her need to obtain a cash advance on two credit cards to pay $2,100 towards her attorneys' fees and for money to live, and her eligibility for assistance to pay her utilities. Wife's Brief at 12-13. Wife argues that the assets she obtained through equitable distribution are mostly not liquid, whereas Husband has liquid assets to draw upon. ***Id.*** Finally, Wife asserts that it was improper for the trial court to have considered the domestic violence Wife perpetrated against Husband when affirming the master's recommendation to deny Wife's request for counsel fees.[3] ***Id.*** at 13.

---

[3] Wife also asserts one other argument that we dispose of here. She claims baldly that she is entitled to attorneys' fees because Husband protracted the litigation by denying the existence of a defined benefit plan up until the last day of testimony. ***Id.*** A party to an equitable distribution action may be

The issue of whether Wife is entitled to counsel fees is a close call. We recognize, as the master did, that even if Wife works to her full capacity, she has a limited ability to acquire new assets, and Husband's income still greatly exceeds Wife's earning capacity. Additionally, while the equitable distribution award gives Wife certain assets, as she points out, most of these assets are not liquid. The facts suggest that the parties may not be "on a 'par' with one another as to cash available for counsel fees…." ***Litmans v. Litmans***, 673 A.2d 382, 390–91 (Pa. Super. 1996) (citing ***Perlberger v. Perlberger***, 626 A.2d 1186 (Pa. Super. 1993)).

On the other hand, the master and the trial court determined that Husband does not have the ability to pay Wife's counsel fees on top of his own because Husband is burdened with almost all of the marital debt and other costs of litigation. Furthermore, although Wife argues that her financial need to be relieved of counsel fees is demonstrated by her

---

awarded counsel fees when another party engages in dilatory, obdurate, or vexatious conduct during the pendency of a matter. ***Verholek v. Verholek***, 741 A.2d 792, 799 (Pa. Super. 1999) (citing 42 Pa.C.S. § 2503(7)). However, Wife did not include this issue in her exceptions to the master's report. ***See*** Wife's Exceptions to Master's Report, 5/25/2016, at ¶ 11 (alleging the denial of counsel fees was improper because Wife established need and Husband's ability to pay). Because it was neither presented to nor addressed by the trial court, Wife has waived this theory. ***See Nagle v. Nagle***, 799 A.2d 812, 821 (Pa. Super. 2002) (holding that a party waived his claim because his exceptions presented a different argument to the trial court). Even if Wife had preserved her objection to the denial of counsel fees based on this theory, the citations Wife provides to the record, without more, do not compel the conclusion that husband engaged in dilatory, obdurate, or vexatious conduct.

incurrence of post-separation credit card debt, the master specifically found "Wife's testimony that after separation she was required to cash in her IRA, refinance her vehicle and **incur credit card debt to live** [to] not [be] credible." Master's Award, 5/5/2016, at 6 (emphasis added).

Specifically, the master assigned an earning capacity to Wife of $1,275.26, and determined that prior to the parties' marriage, Wife was able to meet her reasonable needs, including paying the mortgage on her residence, with income of $1,275.26 a month. *Id.* In 2013, Wife refinanced her vehicle and took out a loan from her life insurance policy despite receiving $1,275.26 a month in income from her employment plus child support, and not being responsible for the mortgage because Husband was paying it. *Id.* In 2014 and 2015, although Wife had been laid off, she was still receiving other sources of income ($1,275.26 a month in salary for part of 2014, unemployment compensation in 2014, $842.36 a month in salary starting in 2015, and child and spousal support in both years in the amounts of $428.06 and $566.00 per month, respectively), and Husband was paying almost all of the marital debt, including the mortgage on Wife's residence. *Id.* at 6-7. The master determined Wife could meet her reasonable expenses without receiving $23,235.00 from her IRA, which was more than she earned in a year when she had been employed at the insurance company. *Id.* at 7. He also found the second distribution from her IRA in the amount of $2,800 and loans from her credit card in the amount of

$4741.10 to be unnecessary. *Id.* at 7. Additionally, in 2015, Wife had to pay $9,959.21 to Husband in restitution for his medical bills caused by her violence towards him, which was not a part of Wife's ordinary living expenses. *Id.*

Thus, there are competing considerations in this case regarding the factors described in *Teodorski*, and if the trial court had confined its analysis to these factors, we would be constrained to conclude that the trial court acted within its discretion in denying Wife's request for counsel fees. However, an examination of the trial court's decision plainly shows that the trial court impermissibly considered Wife's domestic violence against Husband when ruling upon Wife's counsel fee request. As Wife correctly observes, unlike the statutory alimony factors which explicitly list marital misconduct as a factor the trial court may consider, the statutory provision regarding assignment of counsel fees does not mention marital misconduct. *Compare* 23 Pa.C.S. § 3701(b)(14) *with* 23 Pa.C.S. § 3702. Furthermore, the cases construing the Divorce Code have not listed wrongdoing against another party as a factor for consideration. *See, e.g., Teodorski*, 857 A.2d at 201. In fact, this Court has stated that "[t]he purpose of an award of counsel fees is not to punish one spouse [or] to reward the other." *Hoover v. Hoover*, 431 A.2d 337, 338 (Pa. Super. 1981). Therefore, we conclude that the trial court committed reversible error in basing its counsel fee determination in part upon an impermissible factor.

In Wife's second issue, she asks us to decide whether the trial court abused its discretion by directing that the savings bonds held jointly between Wife and Son be cashed and deposited into the Clarion County Community Bank savings account, which designated Son as a beneficiary under PUTMA.

In denying Wife's exception, the trial court stated that

[t]he record supports the conclusion that the master directed that these savings bonds be removed from Wife's name and deposited in [Son's] name only so as to remove the possibility that Wife could cash the bonds out for her own benefit and disrupt the equitable distribution scheme crafted by the master. In the absence of any legal authority as to why this is improper, the court finds this conclusion reasonable, and will deny this exception.

Trial Court Opinion and Order, 8/31/2016, at 3 (unnecessary capitalization omitted; references to parties altered).

Wife has failed to develop any meaningful argument on appeal as to why the trial court's ruling was an abuse of discretion. Not only did Wife's exception to the master's recommendation regarding the savings bond not contain any legal authority, other than noting that the bonds had not matured, Wife's exception was devoid of analysis as to why the master allegedly erred. *See* Wife's Exceptions to Master's Report, 5/25/2016, at ¶ 16. In her brief, Wife faults the trial court for not making any findings regarding the financial impact of cashing the bonds, but Wife did not present evidence on this issue. The only testimony regarding the bonds comes from

Husband, who testified that he estimated their worth to be approximately $2,000, that Wife's relatives gifted the bonds to Son, that the names of Wife and Son are on the bonds, and that the bond certificates are located in Husband's filing cabinet. Master's Report, 5/5/2016, at 13 (citing N.T., 11/17/2015, at 149-50). Wife also alludes to the possibility that the bonds could be Son's property under PUTMA and exempt from equitable distribution, **see** Wife's Brief at 15 ("[Wife] submits the savings bonds could very well meet the requirements of [PUTMA] and therefore, be the minor's property and not subject to the trial court's determination in the equitable distribution scheme."), but Wife fails to set forth the requirements of PUTMA or apply the requirements to the bonds at issue. Finally, although Wife notes correctly that Husband has possession of the bonds, thereby limiting Wife's ability to cash them, Wife fails to convince us that the trial court's direction to cash the bonds to ensure that Son receives them was outside of its discretion. Accordingly, Wife's second issue does not merit relief.

Based on the foregoing, we vacate the portion of the trial court's order denying Wife's request for counsel fees and remand for the trial court to re-evaluate Wife's request for counsel fees pursuant to the factors described in **Teodorski** without consideration of her marital misconduct against Husband. Because Wife has failed to convince us that the trial court abused its discretion in adopting the recommendations of the master regarding cashing of the bonds, we affirm that portion of the trial court's order.

Order affirmed in part and vacated in part. Case remanded to the trial court for proceedings consistent with this memorandum. Jurisdiction relinquished.

PJE Bender joins.

Judge Bowes files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 9/27/2017