J-S32031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GREGORY BRADSHAW | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GENEVIEVE R. BRADSHAW | : | No. 602 WDA 2021 |

Appeal from the Decree Entered May 5, 2021
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD-18-007403-002

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED: DECEMBER 3, 2021**

Gregory Bradshaw ("Husband") appeals from the Order equitably distributing the marital assets of Husband and Genevieve Bradshaw ("Wife"), which was made final by the entry of the May 5, 2021, Divorce Decree.  We affirm.

Husband and Wife married on September 1, 1989, and separated on February 26, 2018.  As of December 2019, Wife was 63 years old, and Husband was 62 years old.  No children were born of the marriage, although Wife has two adult daughters.  On December 11, 2019, a hearing was held before Melanie Shannon Rothey, Esquire, Permanent Master ("the Master"), on the issues of equitable distribution, alimony, and counsel fees/expenses. Husband and Wife submitted multiple oral and written stipulations for the Master's consideration.

The Master filed her Report and Recommendation on January 8, 2020.

In that report, the Master set forth the following summary of Husband and

Wife's testimony at the equitable distribution hearing:

Husband testified as follows:

Husband … is a high school graduate, [and] worked at a variety of jobs during the marriage, culminating in his current position as a bus operator with the Port Authority of Allegheny County, where he has worked since September 25, 2000[,] and will earn approximately $91,000 gross income in 2019.  The parties were married on September 1, 1989[,] in Texas.  When they moved to Pittsburgh the following year, they moved into a four-unit property located at 320 First [Street] [("First Street Property")], that Wife and her three siblings inherited from her [f]ather, [located in Pittsburgh, Pennsylvania].  In 2009, the parties purchased one sibling's 25% interest for $30,000.   When the First [Street] property was sold in 2015, the parties moved into the Altmeyer Alley property [("Altmeyer Property")], [located in Pittsburgh, Pennsylvania,] which is a four-unit rental property purchased by the parties in 2002.

The Altmeyer [P]roperty is designated as 129 Altmeyer Alley, which is a two-unit building, with Husband residing in Apartment 1[;] and 131 Altmeyer Alley, which is a two-unit building, with Wife residing in Apartment 1.  Husband collects the $575 rent on 129 Altmeyer Alley, Apartment 2[;] []Wife collects the $700 rent on 131 Altmeyer Alley, Apartment 2.  Husband pays the mortgage, taxes, and insurance of $1,315.69 [per month], which covers all four units.

In 1990, the parties entered into a lease for a campground at Moraine Camplands in Slippery Rock, PA.   There is a 1994 Vanguard trailer on the property.  Husband estimated the value of the trailer and the property to be $20,000.  The parties sold a second lot in the same campground for $6,000 in 2014 and deposited the funds into the Port Conneaut F[ederal] C[redit] U[nion] Account.

In 2012, the parties purchased a residence located at 942 Harbor Street, Conneaut, OH, which was to be their retirement home. The mortgage on the property was paid off in October 2019.

The parties have two boats—a 1994 Carolina Skiff with a stipulated value of $1,000[,] and a 21-foot Seaswirl Striper fishing boat, which Husband valued at $4,000.

With regard to motorcycles, Husband testified that the parties purchased a 1998 Harley-Davidson in 2004. After the bike was confiscated by the FBI, the parties discovered that it was assembled from stolen parts of other bikes. Husband valued the Harley at $3,000, or "maybe $0". Also, the parties have a 1990 Yamaha Route 66 250 hp motorcycle with a stipulated value of $1,000.

Each party has a firearms collection. Husband owns 10 long guns and "4 or 5" pistols, some of which he owned prior to the marriage. There were 2 shotguns and 5 pistols purchased during the marriage with a total value of $2,500. These guns are in a gun safe in Wife's basement. Wife owns 4 guns—a .44 Magnum, a 20-guage pump shotgun, a Ruger, and a .357, with a total value of $1,000.

Wife testified as follows:

Wife … worked as a [licensed practical nurse] and a registered nurse during the marriage. Her most recent employment with [Allegheny Health Network ("AHN")] as a Case Manager ended in March 2019, when she went on Short-Term Disability due to surgery on her right hand, which was followed by surgery on her left hand in May 2019. She had blepharoplasty surgery (eye lid surgery) in July 2019, her rotator cuff repaired in September 2019, and a second surgery on her left hand in November 2019. She was terminated from AHN on July 9, 2019, as she had exhausted her [Family Medical Leave Act] leave and personal leave, and she was unable to return to work. Wife stated that she can no longer meet the requirements of her job (*i.e.*, she cannot lift 50 pounds, she cannot perform CPR, she cannot draw blood, *etc*.). Wife received Short-Term Disability at $704/week for a period of 5 weeks. She began receiving Long-Term Disability at $3,137.18/month on September 27, 2019, which will terminate on June 10, 2022, when she is eligible to collect her full Social Security benefit.

Wife agrees with Husband that the parties each had a collection of firearms. She estimated the value of Husband's firearms to be $6,000. She did not place a value on her firearms.

When her [f]ather died in 1989, [Wife] and her three siblings inherited the First Street [P]roperty. The parties lived in the property, rent-free, for 24 years. They paid the real estate taxes and homeowner's insurance. In 2009, the parties purchased one sibling's 25% interest for $20,240 ($880/month x 23 months). The property was sold on August 3, 2015[,] for $289,000, plus $48,000 for the household goods and furnishings. Wife's share of the proceeds w[as] deposited as follows: $144,192.13 on August 4, 2015[,] into the parties' joint PNC Bank Savings Account #1594 and $27,381.32 on August 7, 2015[,] into the parties' joint Port Conneaut FCU Account.

Wife provided a detailed Budget as Exhibit Z. She will be eligible for full Social Security Benefits when she is 66 years, 4 months of age. At that time, she will be entitled to claim a monthly benefit, based upon her earnings record, of approximately $1,623. She has applied for Social Security Disability, which would provide her with a benefit of approximately $1,441/month.

Master's Report and Recommendation, 1/8/2020, at 4-7 (citations omitted).

At the Master's Hearing, the parties also testified regarding a property on Murtland Street ("the Murtland Street Property"), located in Pittsburgh, Pennsylvania, which was purchased for one of Wife's daughters. The Murtland Street Property was purchased almost immediately after the sale of the First Street Property, using funds from the proceeds of the First Street Property. N.T. 12/11/19, at 16, 126. Wife's daughter made monthly payments for the Murtland Street Property, and the funds were either deposited in the Greater Pittsburgh Federal Credit Union ("Greater Pittsburgh FCU") account or Wife kept the funds. *Id.* at 17.

Following the hearing, Husband filed a Petition to Reopen the Record. Petition to Reopen the Record, 12/27/19. In that Petition, Husband averred that after reviewing the exhibits and testimony, counsel realized that Husband had failed to present testimony, *inter alia*, relating to the value of the First Street Property when Wife inherited the same. ***Id.*** at 3. The trial court denied the Motion the same day. Order, 12/27/19.

The Master issued her Report and Recommendation on January 8, 2020. In it, the Master made several recommendations, which were adopted by the trial court, relevant to this appeal. First, the Master recommended that funds in "the escrow account"[1] and the funds in the "Greater Pittsburgh FCU" were not marital property. ***Id.*** at 10. The Master found that the proceeds from the First Avenue Property were 50% marital and 50% non-marital, as Wife had inherited a 25% share of the First Street Property before she married Husband, and Husband and Wife purchased another 25% interest in the First Street Property during their marriage. ***Id.*** The Master further found that Husband and Wife spent the marital portion of the proceeds from the sale of the First Street Property during the marriage. ***Id.*** The Master valued Husband's Harley Davidson Motorcycle at $8,000.00. ***Id.*** at 9. The Master also recommended that the proceeds from the sale of the Murtland Street Property should be classified as nonmarital funds. ***Id.*** at 10. Finally, the Master recommended that the parties divide the marital estate, including

---

[1] The "escrow account" referred to by the Master is a PNC Bank Performance Checking account.

- 5 -

Husband's pension from the Port Authority, with Wife receiving fifty-seven percent of the assets and Husband receiving forty-three percent of the assets. *Id.* at 27.

Husband filed timely Exceptions to the Master's report, and Wife timely filed Cross-Exceptions. The trial court dismissed all of the parties' Exceptions and adopted the Master's Report. Order, 7/17/20. A Decree in Divorce was entered on May 5, 2021. Husband filed a timely Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Husband presents the following questions for our review:

1. Did the trial court abuse its discretion, commit an error of law and reversible error when it failed to consider the increase in value during the marriage of [] Wife's 25% interest in the [First Street Property,] which she received from her father's estate[,] was marital property and subject to equitable distribution?

2. Did the trial court abuse its discretion, commit an error of law and reversible error when it failed to reopen the record and/or remand in order to include evidence as to the value of Wife's 25% interest in the [First Street Property] at the time of her father's death?

3. Did the trial court abuse its discretion, commit an error of law and reversible error in finding that the proceeds from the sale of the Murtland Street property[,]purchased jointly by the parties with the funds received from the sale of the [First Street Property,] including both the funds in the Greater Pittsburgh FCU and the joint escrow account at PNC Bank[,] was not marital property?

4. Did the trial court abuse its discretion, commit an error of law and reversible error in finding that Husband's Harley [Davidson] motorcycle had a value of $8,000.00?

5.   Did the trial court abuse its discretion, commit an error of law and reversible error in awarding Wife 57% of Husband's Port Authority Pension which was confiscatory on its face?

Brief for Appellant at 5.

When reviewing an award of equitable distribution, we apply the following standard:

> [A] trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017) (quoting *Morgante v. Morgante*, 119 A.3d 382, 386-87 (Pa. Super. 2015)).

"An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Yuhas v. Yuhas*, 79 A.3d 700, 704 (Pa. Super. 2013) (*en banc*). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility, and this Court will not reverse those determinations as long as they are supported by the evidence. *Id.*; *Sternlicht v. Sternlicht*, 822 A.2d 732, 742 n.8 (Pa. Super. 2003). We are

also aware that "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." ***Childress v. Bogosian***, 12 A.3d 448, 455–56 (Pa. Super. 2011).

Pursuant to 23 Pa.C.S.A. § 3502, the following factors are relevant to the equitable distribution of marital property:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a)(1)-(11).

We have held that "[t]he weight to be given these factors depends on the facts of each case and is within the court's discretion. We will not reweigh them." *Busse v. Busse*, 921 A.2d 1248, 1260 (Pa. Super. 2007) (citation omitted). In determining the propriety of an equitable distribution award, we must consider the distribution scheme as a whole. *Mercatell v. Mercatell*, 854 A.2d 609, 612 (Pa. Super. 2004). Finally, "we also remain cognizant that 'we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.'" *Schenk v. Schenk*, 880 A.2d 633, 641 (Pa. Super. 2005) (quoting *Hayward v. Hayward*, 868 A.2d 554, 557-58 (Pa. Super. 2005)).

In his first issue, Husband argues that the trial court abused its discretion and committed an error of law when it failed to consider the increase in value of the First Street Property during the marriage. Husband's Brief at 20. Husband argues that any increase in value of the First Street Property should be considered marital property. *Id.* at 21. He further posits that this

matter should have been remanded to allow him to present evidence of the value of the property at the time of Wife's father's death, to determine the increase in the value of the property during the marriage. *Id.* at 22.

It is well established that the court has broad discretion when applying a method of valuation, and that court may reject evidence of valuation from either party in favor of its own valuation method. *See Verholek v. Verholek*, 741 A.2d 792, 795 (Pa. Super. 1999). Moreover, the trial court is free to accept all, none, or portions of testimony relating to the value of an asset and may reject the evidence offered by the parties in favor of its own valuation method. *Id.*

In its Opinion, the trial court observed that, at the Master's hearing, neither party had provided any information on the value of the First Street Property on the date of Wife's inheritance. Trial Court Opinion, 6/29/21, at 4. The court further noted that Wife and Husband moved into the First Street Property almost immediately upon Wife's inheritance, and lived there rent free for approximately 24 years. *Id.* As discussed above, Husband and Wife purchased a sibling's 25% share of the First Street Property. Thus, when the First Street Property was sold, Husband and Wife owned a 25% share, and Wife owned an additional 25% share. *Id.* at 5. The trial court looked to the sale price of the First Street Property ($337,000.00) and awarded Wife $85,787.00, which is one-quarter of the total sale price. *Id.* The trial court

further stated that the Master determined that Husband and Wife spent any increase in the value of Wife's 25% share of the First Street Property.[2]

We find no abuse of discretion on the part of the trial court. As the trial court noted, neither party presented any evidence as to the value of the First Street Property when Wife inherited it. Moreover, we note that although Husband argues that the trial court failed to consider the increase in value, that argument is belied by the record. The trial court found that the increase in value was spent by the parties during their marriage. Trial Court Opinion, 6/29/21, at 4; Master's Report and Recommendation, 1/8/20, at 10. Given the broad discretion granted the trial court and the fact that the Court must consider the distribution scheme as a whole, the trial court did not abuse its discretion or err in determining that any increase in the value of Wife's 25% share was spent by the parties during the marriage. Husband is due no relief on this issue.

In his second issue, Husband argues that the trial court erred when it denied his Petition to Reopen for further proceedings to allow evidence of the value of the First Street Property at the time Wife inherited a share of the property. Husband's Brief at 24. Husband posits that the trial court erred

_____

[2] The trial court found that the Master's determination that the parties expended any monies deemed marital was supported by the following purchases: the purchase of Wife's brother's share of First Street Property; the purchase of the Altmeyer Street property; the purchase of a residence in Conneaut, Ohio; the vacations the parties took together; and the purchases of boats, motorcycles and firearms. Trial Court Opinion, 6/29/21, at 5.

when it denied his Petition because without that information, the court could not determine the increase in value of Wife's 25% share during the marriage. Husband's Brief at 26.

"The general rule is that a court may, in its discretion, reopen the case after a party has closed for the taking of additional testimony, but such matters are peculiarly within the sound discretion of the trial court." ***Colonna v. Colonna***, 791 A.2d 353, 356-57 (Pa. Super. 2001) (citation and quotations omitted).

> The trial court set forth the following analysis of the issue:
>
> Husband has not acquired any new evidence that could not have been obtained prior to the hearing. He was well aware that an inheritance existed as he stipulated to the date it was received. Husband had a period of discovery prior to the hearing. His failure to introduce the evidence requested in his [P]etition was due to his own omission. Further, reopening the record for such a limited purpose would have caused unjust delay. The parties would have had to reschedule another hearing before the Master, which likely would have been months from any order to reopen the record.

Trial Court Opinion, 6/29/21, at 6. We discern no abuse of discretion in the trial court's denial of Husband's Petition to Reopen the Record. As such, we cannot grant Husband relief on this claim.

In his third issue on appeal, Husband argues that the trial court improperly found that the proceeds from the sale of the Murtland Street Property were not marital property. Husband's Brief at 27. Husband argues that Wife comingled inherited funds with marital funds by placing the funds in

various bank accounts, including the Greater Pittsburgh FCU account.[3]  *Id.*

Husband also argues that the trial court erred in determining that the funds

were nonmarital, because the record does not contain information regarding

the manner in which the funds were spent or by whom.  *Id.* at 30.  Finally,

Husband argues that it was error for the court to conclude that the funds were

nonmarital, and that the funds had been used to purchase other properties,

motorcycles, and guns, as those items were purchased *before* the sale of the

First Street Property.  *Id.* at 34.

> The trial court addressed Husband's claim as follows:

> No abuse of discretion exists as the Murtland Street Property was purchased as a gift to Wife's daughter solely through Wife's non-marital inheritance funds.  Therefore, the proceeds in sale belong to Wife.  Nonmarital property only transitions to marital property if it is commingled with and loses its identity as nonmarital property.  [*Verholek*, 741 A.2d at 797].  In *Verholek*, husband used a portion of his inheritance to purchase the first marital home.  *Id.*  Based on testimony that he never considered the money to be separate, the court determined that it was sufficiently commingled and therefore marital.  *Id.*  In the present case, the couple's daughter paid monthly installments for the Murtland Street Property by checks.  Sometimes these funds were deposited into an escrow account opened through Wife's employer[,] and other times the funds were cashed by Wife.  Husband testified that he did not know how Wife used the money when cashing checks[,] and he only withdrew from the escrow account when directed by Wife.  Lastly, the parties stipulated that

---

[3] To the extent Husband challenges the Master's finding that the funds in the Greater Pittsburgh FCU account were not marital property, Husband failed to raise this issue in his Exceptions to the Master's Report and Recommendation, and therefore, the issue is waived.  Pa.R.C.P. 1920.55-2(b) (providing that "[m]atters not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters.").

- 13 -

any funds in the escrow account were attributable to Wife. The evidence of record shows that the funds from the Murtland Street [P]roperty were not sufficiently comingled to change its nature from nonmarital to marital property.

Trial Court Opinion, 6/29/20, at 7 (record citations omitted).

After a review of the record, we discern no abuse of discretion by the trial court in determining that the funds were not commingled and retained their nonmarital designation. Although Husband argues that the trial court erred in finding that the parties spent the marital portion of the proceeds from the sale of the First Street Property because those purchases were made before the sale of the property, Husband failed to include any case law discussing the issue. It is not this Court's duty to act as counsel for Husband, and we will not do so. *Andaloro v. Armstrong World Indus., Inc.*, 799 A.2d 71, 87 (Pa. Super. 2002) (finding that Pa.R.A.P. 2119(a) requires citation to pertinent authority for an issue to be addressed).

Further, the record reflects that, prior to their marriage, Wife received a share of the First Street Property. Husband and Wife lived in the First Street Property for nearly a quarter of a century rent- and mortgage-free due to Wife's inheritance; thus, Wife contributed a substantial monetary benefit to Husband during their marriage. Moreover, the record is replete with examples of real estate, vehicles and other items the parties purchased over the course of their marriage, while they were living rent-free in the First Street Property. "[E]quitable distribution does not presume an equal division of marital property and the goal of economic justice will often dictate otherwise…."

*Schenk*, 880 A.2d at 639. Given the above, we do not discern an abuse of discretion in the trial court's determination that the funds used to purchase the Murtland Street Property were nonmarital funds, as such a finding fits within the distribution scheme a whole. Husband is due no relief on his third issue.

In his fourth issue, Husband argues that the trial court erred when it valued his Harley Davidson motorcycle at $8,000.00. Husband's Brief at 38. Husband argues that because of the motorcycle's status as a theft recovery vehicle, its value is significantly lower. *Id.* at 39. Husband asserts that the "fact finder in this case totally disregarded the credible testimony of [] Husband with regard to [the] value of the bike." *Id.* at 40.

In her Report and Recommendation, the Master noted that "Husband has slightly undervalued this asset and Wife has grossly overvalued this asset[,]" and noted that the motorcycle would be difficult to sell because it was assembled from stolen parts. Master's Report and Recommendation, 1/8/21, at 9 n.7. The trial court accepted this finding. Trial Court Opinion, 6/29/21, at 7-8.

Our review of the record discloses that Husband testified that he believed the motorcycle was valued at $3,000.00 or had no value at all. N.T., 12/11/19, at 33. Husband also testified that the motorcycle was assembled from stolen parts and would be difficult to sell. *Id.* Wife countered, valuing the motorcycle at $25,000.00. *Id.* at 131. Husband did not present testimony

- 15 -

regarding the purchase price of the motorcycle, but Wife testified that Husband paid $28,000.00-$30,000.00 for the motorcycle. *Id.* at 131. Neither party offered expert testimony regarding the value of the motorcycle.

Thus, the valuation of the motorcycle at $8,000 is supported in the record, and we discern no abuse of discretion in this regard. *See Verholek*, 741 A.2d at 796. Husband is due no relief on this claim.

In his final issue, Husband argues that the trial court improperly awarded Wife 57% of the marital estate, including Husband's Port Authority pension. Husband's Brief at 41. In support, Husband relies on his testimony that he paid the mortgage payments on several properties, and also for car insurance, vehicles and vacations. *Id.* Husband further argues that Wife has more education that Husband. *Id.* at 42. Husband further argues that his Port Authority pension was created "through the fruits of Husband's labors[,]" and to award Wife 57% of his pension amounts to penalizing Husband for accumulating the benefits. *Id.* at 44. Finally, Husband argues the Master improperly failed to take Wife's separate property into account, including the fact that Wife will have rental income from the Altmeyer Property, and access to funds in excess of $87,000.00. *Id.* at 48. Husband acknowledges, however, that Wife is currently collecting disability benefits due to several surgeries. *Id.* at 45.

A review of the Master's Report and Recommendation reveals that the Master properly considered all of the factors set forth in 23 Pa.C.S.A. § 3502.

Specifically, in relation to factor 5, relating to the opportunity for future acquisition of assets, the Master found that Husband will continue to contribute to his retirement account, and his income is greater than Wife's disability payments. Master's Report and Recommendation, 1/8/20, at 13. As to factor six, relating to benefits, the Master found that Husband has medical and retirement benefits, while Wife has none. *Id.* at 14. The Master also found that both parties contributed to the acquisition of marital property; Wife has $87,000.00 from an inheritance; and both parties have some additional retirement funds. *Id.* Finally, as to factor 10, the Master noted that although Husband's income is greater than Wife's disability payments, Wife will receive rental income on the three units in the Altmeyer Property. *Id.* at 15.

In this case, the Master set forth each factor, appropriately considered each factor, and made her recommendations based upon the statutory factors set forth in Section 3502, and the trial court accepted the Master's findings. Trial Court Opinion, 6/29/21, at 9. As the findings are supported in the record, we discern no abuse of discretion in this regard. Consequently, Husband is entitled to no relief.

Based upon the foregoing, we affirm the Order equitably distributing Husband and Wife's marital assets.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/3/2021</u>